**GOOD LUCK NURSING HOME, INC. d/b/a Magnolia Gardens Nursing Home, Appellant,**

v.

**Patricia R. HARRIS, Secretary of Health, Education and Welfare.**

**No. 79–1853.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1980.

Decided Aug. 20, 1980.

Leslie H. Wiesenfelder, Washington, D. C., with whom Bernard J. Long, Jr., Washington, D. C., was on brief, for appellant. Catherine T. Porter, Washington, D. C., also entered an appearance for appellant.

Henry R. Goldberg, Atty., Dept. of Health, Education and Welfare, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., and Robert Kopp, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before WRIGHT, Chief Judge, and WALD and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in part filed by Circuit Judge WALD.

MIKVA, Circuit Judge:

█ Appellant Good Luck Nursing Home, Inc., a provider of health services under the Medicare program, sought reimbursement of certain legal and accounting expenses incurred in connection with that program. When reimbursement was denied by the Department of Health, Education and Welfare–now Health and Human Services [1]–the appellant sought review in the United States District Court. At first, the district court granted summary judgment in appellant's favor. After that initial judgment, however, it was revealed that the expenses in question were incurred primarily in defending a civil action against the appellant and others in which Medicare fraud and overpayment had been alleged. In light of that fact, the district court vacated its initial judgment, ruled that no expenses attributable to that litigation could be reimbursed, and remanded the case to the administrative agency for appropri-

---

1. *See* 20 U.S.C.A. § 3508 (Supp.1980).

ate action. We hold that as a matter of law, a provider of Medicare services is not entitled to reimbursement for legal and related expenses incurred unsuccessfully defending against an action for fraud arising out of its participation in that program. However, because the record on appeal is not adequate for applying that rule to this case, the matter is returned to the agency for reconsideration.

## I. BACKGROUND

### A. *The Medicare Program*

The Medicare program was enacted by Congress in 1965 as Title XVIII of the Social Security Act. Social Security Act Amendments of 1965, Pub.L. No. 89–97, 79 Stat. 291 (amended and codified at 42 U.S.C. §§ 1395–95pp (1976 & Supp. II 1978)). Under one part of that program, the only part relevant to this appeal, Medicare beneficiaries are insured for the cost of hospital and subsequent convalescent care. 42 U.S.C. § 1395c. Participating health care institutions–the "providers of services"–are paid the "reasonable cost" of Medicare services furnished to beneficiaries. 42 U.S.C. § 1395f(b); 42 C.F.R. § 405.454 (1979). Because Medicare reimburses providers on what is essentially a "cost–plus" basis, problems like those which became apparent in this case arise.

Reimbursement to providers is made at periodic intervals, no less frequently than once a month, in amounts set by the Secretary of Health and Human Services. 42 U.S.C. § 1395g. Subsequent adjustments, if necessary, are made for any overpayments or underpayments that may have occurred. *Id.* The responsibility for making and monitoring reimbursements to providers can be assigned by the Secretary to other agencies, which serve as fiscal intermediaries of the program. 42 U.S.C. § 1395h. These intermediaries, which are often private insurance companies, also make interim periodic payments to providers. Adjustments, if necessary, come at the end of the accounting year when the intermediary makes a final determination of the total reimbursement due. 42 C.F.R. § 450.405 (1979). A provider dissatisfied with the intermediary's final determination may, subject to certain procedural prerequisites, appeal to the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo. The Review Board has broad authority to "affirm, modify, or reverse" an intermediary's determination and, generally, to make any disposition it deems appropriate. 42 U.S.C. § 1395oo(d). The Secretary may, at his option, review the Board's decision, which is otherwise final. 42 U.S.C. § 1395oo(f). Ultimately, judicial review can be had by filing a civil action in the district court. *Id.*

The Act mandates that health care providers be reimbursed fully for the Medicare costs they incur, including both the direct and indirect costs of caring for program beneficiaries. 42 U.S.C. § 1395x(v)(1)(A). The statutory objective is to ensure that the Medicare program bears the full and actual cost of providing care for its beneficiaries but none of the cost of providing health care to anyone else. *Id.* Therefore, when a provider, like the appellant here, serves both patients who are covered by Medicare and patients who are not, the indirect but allowable costs of patient care must be apportioned between these two groups. According to the regulatory formula for effecting that apportionment, general administrative costs are only partially reimbursed. *See* 42 C.F.R. §§ 405.-451–.453 (1979). Although not the issue before this court, the original impetus for this case was whether certain legal and accounting expenses should be included in the general administrative account–in which case they would be only partially reimbursed–or treated as a direct cost of the Medicare program–in which case they would be reimbursed in full.

### B. *The Proceedings Below*

At issue in this suit are approximately $42,000 of legal and accounting expenses incurred by the appellant after it had stopped participating in the Medicare program. The appellant's fiscal intermediary had determined that these expenses should be included in the category of administra-

tive and general expenses, subject to apportionment and only partial reimbursement. Dissatisfied with that determination, the appellant pursued its right to administrative review.

The Provider Reimbursement Review Board accepted the appellant's contention that the expenses in question were incurred "solely as a direct result of, and in connection with, its participation in the Medicare program." *Good Luck Nursing Home, Inc. v. Mutual of Omaha Ins. Co.*, No. 76–145, slip op. at 2 (P.R.R.B. March 17, 1978). The Board, nevertheless, sustained the intermediary's determination on the ground that Medicare allocates all allowable legal expenses to the general administrative account, without regard to their propinquity to a provider's program participation. After the Board's decision had become final, the appellant sought review in the district court.

Based on the factual stipulations of the parties, the district court granted summary judgment for the appellant. About three months after that judgment, however, the Government moved for relief from judgment under rule 60(b) of the Federal Rules of Civil Procedure, claiming that a fact previously undisclosed to the district court affected the propriety of its initial judgment. The fact was the purpose for which the legal and accounting fees had been incurred.

The bulk of the fees in question related to the appellant's legal defense in the case of *United States v. Leon R. Levitsky*, Civ. No. T–74–1389 (D.Md., filed Dec. 19, 1974), a civil action against the appellant corporation, some of its managing physicians, and others associated with them. Alleging that almost $10,000 in overpayments had been procured through a fraudulent scheme to obtain Medicare reimbursement for non–allowable costs, the Government in *Levitsky* sought recovery of double the alleged overpayment plus over $250,000 in penalties. Although pending while the case under re-

view here was winding its way through the administrative process, neither the existence of the *Levitsky* suit nor its possible relationship to the appellant's claim for reimbursement was ever raised before the agency Review Board. On June 30, 1978–after the Board's decision in this case but before the district court's initial judgment–the *Levitsky* suit was settled by a payment of $19,500. None of this had been disclosed to the district court until after its initial decision was handed down.

In light of this new information, the district court concluded that its initial decision had been based on a "fundamental misconception of the facts." *Good Luck Nursing Home, Inc. v. Califano*, Civ. No. 78–863, slip op. 1 at 2 (D.D.C. June 22, 1979). Accordingly, the district court granted the Government's motion for relief from judgment pursuant to rule 60(b)(6). It then entered an order, (1) vacating the prior judgment and nullifying its accompanying memorandum of law, (2) directing that expenses connected in any way with the *Levitsky* litigation could not be reimbursed, and (3) remanding the case to the agency for a de novo consideration of the appellant's request for reimbursement.[2]

## II. ISSUES ON APPEAL

By a series of twists and turns this case has become something different from what it was at the start. The dispute began with the question of whether certain allowable Medicare costs should be reimbursed in full or in part. The central issue now on appeal, however, is whether those expenses may be reimbursed at all. The secondary issue concerns just how broadly the disqualification for litigation–related expenses should be drawn.

### A. *Relief from Judgment under Rule 60(b)(6)*

Before addressing the merits of the order under review, we must address the procedural question of whether the district court

---

**2.** Because the district court vacated its initial judgment and nullified its accompanying memorandum, this court has no occasion to review the correctness of the conclusions of law contained therein.

correctly applied rule 60(b)(6) in granting the Government's motion for relief from the initial judgment. Although this form of relief should be only sparingly used,[3] we conclude that its application here was correct.

Rule 60(b) was intended to preserve "the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of *all* the facts." *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (emphasis in original); *accord, Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *Boughner v. Secretary of HEW*, 572 F.2d 976, 977 (3d Cir. 1978); *Clarke v. Burkle*, 570 F.2d 824, 830 (8th Cir. 1978). But as the Supreme Court has said, "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950). Rule 60(b) cannot, therefore, be employed simply to rescue a litigant from strategic choices that later turn out to be improvident. *See Marshall v. Board of Educ.*, 575 F.2d 417, 424 (3d Cir. 1978); *Federal's, Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 583 (6th Cir. 1977); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 651–52 (1st Cir. 1972). And a party that has stipulated to certain facts or has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down. *See Couch v. Travelers Insurance Co.*, 551 F.2d 958, 959 (5th Cir. 1977); 11 C. Wright & A. Miller, Federal Practice & Procedure § 2858, at 170–73 (1973).

This does not mean, however, that the district court is powerless to correct errors into which it is led by the parties' failure to make the key facts known.

When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable. *See Gray v. Estelle*, 574 F.2d 209, 214–15 (5th Cir. 1978). *Cf. Compton v. Alton Steamship Co., supra*, 608 F.2d at 107; *Boughner v. Secretary of HEW, supra*, 572 F.2d at 978–79.

The court below was presented with just such a case. If its initial judgment had stood, the Government would have been compelled to pay attorneys' fees to what appeared to be the *losing* side in an action for fraud. It is not gainsaid that the Medicare program is required to reimburse providers for any "reasonable cost," which often includes litigative costs and, indeed, litigative costs for suits in which the Government or its agent is on the other side. But Congress could not have intended that the Medicare program subsidize those who defraud it in their litigative maneuvers to wriggle off the hook. *See* part II–B, *infra*. Yet if the contentions in the Government's motion for reconsideration were true, the district court's then–extant judgment would have had that result.

It should be noted, too, that the rule 60(b) motion in this case was made within three months of the original judgment, and the substitute order entered about three months after that. Although the appellant might have been disappointed by having its initial victory so quickly snatched away, it has not been so prejudiced as to make reconsideration under the rule inappropriate. *See Johnson Waste Materials v. Marshall*, 611 F.2d 593, 601 (5th Cir. 1980); *Compton v. Alton Steamship Co., supra*, 608 F.2d at 103; *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir. 1970). In this case, then, the interest that litigation must someday end was only slightly impinged, while the countervailing interest that justice be done

---

**3.** *See, e. g., Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950) (Rule 60(b)(6) applies only to "a case of extraordinary circumstances"); *Goland v. CIA*, 607 F.2d 339, 373 (D.C. Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864, at 219–20 (1973).

was seriously at stake. The district court was well justified in deciding to give this case a strong second look.[4]

## B. *Fraud and Reimbursement*

After its second look, the district court concluded that legal and related expenses connected in any way to the *Levitsky* litigation were not eligible for reimbursement from Medicare funds. In reaching this conclusion, however, the court applied an overly broad legal rule.[5]

The Social Security Act defines the "reasonable cost" of providing Medicare services as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). In accordance with his statutory authority, *see id.*, the Secretary has elaborated the meaning of "reasonable cost" for the purpose of Medicare reimbursement:

> *Principle.* All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs incurred in rendering the services. . . .
>
>   .     .     .     .     .
>
>   . . . Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity.

---

4. Like the district court, we decide this case under rule 60(b)(6) rather than under rule 60(b)(1). Because the motion was timely under either subsection, it is not crucial that a distinction between the two be made in this case. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864, at 212 (1973). Moreover, it may be doubted whether the mistake involved in this case was of the kind that rule 60(b)(1) was intended to remedy. *See id.* § 2858, at 173 & n.13.

5. In its decision in this case the district court said:

42 C.F.R. § 405.451 (1979). There could be nothing clearer in the plain meaning of the statute or in the Secretary's elaboration of it than this: Congress did not intend to have Medicare funds used to subsidize Medicare fraud. Nor could Congress have intended that those adjudged to have defrauded the Medicare program be reimbursed from the program itself for the cost of their unsuccessful legal defense. The court finds it difficult to imagine anything *less* necessary or proper for the efficient delivery of health care to the aged and infirm. As a matter of law, therefore, legal and related expenses incurred in the unsuccessful defense of an action for Medicare fraud are not "reasonable cost[s]" related to providing health care to Medicare beneficiaries. Those expenses are not "allowable costs" under the program, and they cannot be reimbursed.

It does not follow that in all cases against the Government, a provider's litigation expenses are ineligible for reimbursement; it is here that we think the district court overextended the applicable standard. In a program as complicated as the Medicare reimbursement scheme, it can be expected that providers will have honest disputes with the Government or its fiscal agents over how much money is owing to whom. A provider that disagrees in good faith with the Government over the existence of an overpayment or underpayment is provided administrative and judicial procedures for the resolution of the dispute. The legal and accounting expenses associated with such litigation are part of the cost of participating in the Medicare program, and providers are entitled to reimbursement for

> [T]he court holds that attorney's fees expended to defend a provider against charges of Medicare overpayment or fraud are not, as a matter of law, reasonable expenses incurred in providing services to Medicare patients. It would violate public policy to require the public to pay for the defense of a case involving alleged fraud or overpayment, whether the defendant prevails, or loses, or the case is settled.
>
> *Good Luck Nursing Home, Inc. v. Califano, supra*, at 3. We think this paints with too broad a brush, and the statement must be disapproved.

those costs in accordance with the appropriate reimbursement formula. Since the delineation between different kinds of litigation expenses was not a question addressed by the agency as the finder of fact, that issue must be submitted for its determination in the first instance.

The major portion of the expenses disputed in this case were incurred by the appellant in relation to its defense in the suit of *United States v. Leon R. Levitsky, supra.* In its complaint in that case, the Government addressed dealings between Good Luck, a nursing home, and a medical equipment supply company called Prince George's Medical Equipment Company (Prince George's). From the facts alleged in the complaint, Prince George's had the trappings of a "dummy" corporation: only the subscribers of Good Luck or their spouses were the directors of Prince George's which appears to have had no business dealings other than with Good Luck, and Prince George's was effectively managed by Dr. Levitsky, who was one of the three subscribers of Good Luck and the husband of one of the three subscriber/directors of Prince George's.[6]

On the basis of the interlocking ownership and control alleged in the complaint, Good Luck and Prince George's were clearly "related organizations" under the Medicare regulations. *See* 42 C.F.R. § 405.427 (1979). As such, Good Luck, the provider, could claim as an "allowable cost" only the actual cost of the equipment furnished by Prince George's. *Id.* Nonetheless, Good Luck sought from one of its fiscal intermediaries reimbursement based on the rental charges for the equipment supplied by Prince George's. As a result, Good Luck was paid about $7,200 in reimbursement for equipment whose actual cost, according to the complaint, was only $800. At the same time, the complaint alleged, Good Luck submitted 125 individual claims to another intermediary for the same equipment and ultimately received about $3,400 in reimbursement on those claims. Thus, the complaint alleged that Good Luck had fraudulently received from the Medicare program about $9,800. Based on these allegations, the Government sought recovery of double the amount of the overpayment and a $2,000 penalty for each particular instance of fraud, which in the *Levitsky* case amounted to over $250,000.[7]

Based on essentially the same facts, the Government included in its *Levitsky* complaint separate counts for recovery of the exact amount of the sums in question on the theory that they had been paid by mistake. It is clear from the face of the complaint, however, that the overpayment counts were a fallback position and that the gravamen of the Government's complaint was fraud.

As previously noted, the *Levitsky* case was settled for $19,500, almost double the alleged payment. The size of the settlement in proportion to the alleged payments suggests that the Government's allegations of fraud were not just idle talk; the defendants in *Levitsky* were clearly concerned enough about the Government's claims to pay the total amount of alleged overpayments plus a like amount as a penalty.

Although the facts and allegations outlined above would seem to establish a prima facie case that the *Levitsky* settlement amounted to an unsuccessful defense in an action for fraud, no such finding was made either by the agency or by the district court. Moreover, due to the unusual procedural turn this case has taken, the appellant has not yet had its chance to be heard on this factual question, which has now become so central to its reimbursement claim. In such circumstances, the proper course for us is to forego any conclusions that might

6. Because the *Levitsky* suit was dismissed with prejudice pursuant to a settlement, we do not assume that the facts alleged in the *Levitsky* complaint are true. Those allegations, however, define the character of the suit, indicating whether the gravamen of the suit was for fraud or mere overpayment.

7. The statutory authority for the recovery the Government sought is contained in 31 U.S.C. § 231 (1976), a general provision assessing liability to those who present fraudulent claims for payment from government funds.

be drawn about the *Levitsky* case and return the entire matter to the administrative agency to consider appellant's claim anew.[8]

Accordingly, we vacate that portion of the district court's order which mandates that funds connected in any way with the *Levitsky* litigation are not eligible for reimbursement. This will allow the agency to determine, on the facts as developed in its reconsideration, whether that result is warranted or whether some other allocation of litigation expenses should be made. In other respects, the district court's order is affirmed.

*It is so ordered.*

WALD, Circuit Judge, concurring in part:

I agree with the majority's decision to "return the entire matter to the administrative agency to consider appellant's claim anew." However, because of the inadequate record, and because the agency has never had the opportunity to pass on the matters involved here, I would simply vacate the district court's decision and remand to permit the agency to exercise its primary jurisdiction, expressing no opinion on legal issues which may eventually need to be resolved depending on the facts as ultimately developed. Questions of whether and to what extent particular expenses are reimbursable under the Medicare statute are difficult and may have practical repercussions of which we, lacking the agency's insight gained through experience, are unaware.

The proper treatment of litigation expenses strikes me as uniquely difficult, and I would prefer to avoid deciding the issue until the agency has expressed its view in the context of a fully developed factual situation.

---

8. The court appreciates that distinguishing fraud from overpayment and success from defeat in litigation can be a time–consuming and burdensome task. The court also appreciates that smooth and efficient administration are essential if programs like Medicare are to work. Therefore, as long as it acts consistently with Congress' mandate that all, but only "reasonable cost[s]" are reimbursable, the agency is free to adopt those interpretive rules or evidentiary presumptions as will assist in the fair but expeditious disposition of cases like this.