**Laurence E. RANDALL, et al.**

v.

**MERRILL LYNCH, et al., Appellants.**

**No. 86–5372.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 2, 1987.

Decided June 19, 1987.

Barbara Moses, with whom Steven A. Brick, San Francisco, Cal., Jerry W. Markham and Stuart M. Goldberg, Washington, D.C., were on the brief, for appellants.

Paul H. Melbostad, with whom Thomas E. Horn, San Francisco, Cal., and Douglas B. Huron, Washington, D.C., were on the brief, for appellees.

Before MIKVA, STARR and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in part and dissenting in part filed by Circuit Judge WILLIAMS.

MIKVA, Circuit Judge:

This appeal is the latest event in a protracted dispute arising from appellees' maintenance of securities accounts with Merrill Lynch. Appellees twice brought suit against Merrill Lynch in Federal District Court in California. On both occasions, Merrill Lynch successfully moved to transfer to the District of Columbia, and appellees responded in both cases by voluntarily dismissing pursuant to Federal Rule of Civil Procedure 41(a)(1). The rule pro-

vides that a second voluntary dismissal has the effect of an adjudication on the merits. Following the second dismissal, appellees attempted to initiate arbitration. In January, 1986, the Eastern District of California enjoined the arbitration, as well as any other litigation, on the ground that a second voluntary dismissal under Rule 41(a)(1) operates as an adjudication on the merits barring further litigation. After this ruling appellees filed a motion with the District Court for the District of Columbia to vacate the second dismissal. In May, 1986, 110 F.R.D. 342, relying on Federal Rule of Civil Procedure 60(b)(6), the district court vacated the second dismissal, effectively authorizing appellees to go forward with their attempt at arbitration. It is this decision which Merrill Lynch challenges on appeal. We affirm.

## I. Background

In July, 1982, Laurence and Nadine Randall opened accounts with Merrill Lynch in the company's Washington, D.C. office. The Randalls thereafter moved to Chico, California, where they continue to reside. In December, 1983, the Randalls filed a complaint against Merrill Lynch in the United States District Court for the Northern District of California. As amended, the complaint alleged violations of various federal securities laws and regulations, as well as other claims. The essence of appellees' claim was that Merrill Lynch fraudulently concealed trading on the Randalls' account and fraudulently misrepresented the status of the Randalls' account, which caused them to violate prescribed margin requirements. Because of the margin-requirement violations, Merrill Lynch then froze the Randalls' account. As a result of this freeze, a number of options in the Randalls' options account expired, resulting in substantial financial loss. On April 23, 1984, the court granted Merrill Lynch's motion to transfer the case to Washington, D.C. pursuant to 28 U.S.C. § 1404(a). Appellees voluntarily dismissed their case on August 13, 1984, before any proceedings took place in the District Court for the District of Columbia.

Shortly thereafter, the Randalls filed a revised complaint in the U.S. District Court for the Eastern District of California, where Chico is located. The second complaint was substantially identical to the first complaint. As before, Merrill Lynch moved to transfer the case to the District of Columbia. In March, 1985, the court granted the motion to transfer.

In August, 1984, Laurence Randall suffered an attack of acute, stress-related anxiety disorder and was certified as fully disabled by the State of California. Mr. Randall's doctors directed him not to participate in any cross-country litigation because of serious risk of suffering a heart attack or stroke. Mr. Randall's inability to work coupled with the medical costs necessitated by his illness depleted the Randalls' financial resources.

These health and financial concerns prompted the Randalls to terminate their pending legal action. On May 3, 1985, they again filed a notice of voluntary dismissal. The Randalls were informed by counsel that the second voluntary dismissal might have a preclusive effect under the "two-dismissal rule," which is a subsection of Federal Rule 41. That subsection provides that "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claims." Fed.R.Civ.P. 41(a)(1).

After the second voluntary dismissal, appellees filed, on July 9, 1985, a petition for arbitration with the National Association of Securities Dealers. In August, Merrill Lynch filed suit in the Eastern District of California to enjoin the arbitration, citing the two-dismissal rule. The district court granted defendant's motion for summary judgment on that basis. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Randall*, 110 F.R.D. 499 (E.D.Cal.1986). In its opinion, the court stated that "the proper remedy is for the Randalls to move to vacate the second dismissal before the District Court for the District of Columbia rather than a third attempt to litigate the claim." *Id.* at 500.

In March, 1986, appellees filed just such a motion to vacate, and the District Court

for the District of Columbia granted the motion on May 14, 1986. *See Randall v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 110 F.R.D. 342 (D.D.C.1986). The court relied on Rule 60(b)(6), which permits a court to relieve a party from a final judgment for reasons of justice. The court found that at the time of the second dismissal, "Mr. Randall suffered a disabling illness that would permit his participation in this litigation only at the risk of even greater disability" and that "Mr. Randall's illness caused a serious depletion of [appellees'] assets, leaving them unable to maintain litigation in this district." *Id.* at 344. The court also held that the Randalls' decision to terminate the case was not "free, calculated, or strategic," but rather was "precipitated by events beyond their control." The court further found that vacating the second dismissal would not prejudice Merrill Lynch. *Id.* at 344. These findings, coupled with a strong policy favoring resolution of cases on the merits, persuaded the court to grant the Randalls' motion. This appeal followed.

## II. DISCUSSION

### A. *Authority Under Rule 60(b)(6) to Vacate Voluntary Dismissals*

Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure provides a simple, self-executing mechanism whereby a case may be dismissed in certain circumstances without motion, argument, or judicial order. When the plaintiff files a notice of dismissal before service by the adverse party of an answer or of a motion for summary judgment, the dismissal takes effect automatically: the trial judge has no role to play at all. Appellant contends that the dismissal is not only automatic but also irreversible. A trial judge, appellant argues, has no discretion to vacate a Rule 41(a)(1)(i) voluntary dismissal. According to appellant, a judge may not vacate such a dismissal even pursuant to Rule 60(b)(6), which authorizes a court on motion to relieve a party from a "final judgment, order or proceeding for ... any ... reason justifying relief from the operation of judgment."

Appellant primarily relies on *Thorp v. Scarne*, 599 F.2d 1169 (2d Cir.1979), and

*D.C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294 (6th Cir.1975), to support this proposition. We find these authorities inapposite. They held that a trial judge has no discretion to *prevent* a voluntary dismissal in the first instance; they did not speak to whether a court has discretion to vacate a voluntary dismissal at a subsequent time on the original plaintiff's motion. Appellant also cites *Santiago v. Victim Services Agency*, 753 F.2d 219 (2d Cir.1985). But this case also is wide of the point. In *Santiago*, the court held only that once a plaintiff has voluntarily dismissed his case the trial court has no jurisdiction to grant a defendant's motion for attorney's fees. *Santiago* has no bearing on a court's authority to entertain a 60(b) motion to set aside a dismissal under Rule 41 (a)(1)(i). In short, appellant cites no case law, and this court has found none, to support its position.

No such case exists because the language of the Federal Rules of Civil Procedure clearly supports the opposite result. As noted previously, Rule 60(b) allows a court to relieve a party from a "final judgment" for any reason justifying relief. Because the voluntary dismissal in this case operated as an adjudication on the merits, it was a "final judgment" under Rule 60(b). And nothing in the language of Rule 41(a)(1)(i) exempts voluntary dismissals from the scope of judicial authority under Rule 60(b). We therefore conclude that the district court had power to vacate this voluntary dismissal under Rule 60(b) if the requisite justification existed.

### B. *Justification for Application of Rule 60(b)(6)*

A trial court enjoys a large measure of discretion in deciding whether to grant or deny a 60(b) motion, *see* 7 J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 60.19 (2d ed. 1985); 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2857 (1973). A reviewing court may reverse a district court's grant of relief under Rule 60(b)(6) only for an abuse of discretion. *See Southern Pacific Telecommunications Co. v. American Telephone & Telegraph Co.*, 740 F.2d 1011, 1017 (D.C. Cir.1984).

■ Rule 60(b) "was intended to preserve the 'delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts.'" *Good Luck Nursing Home v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980). Two Supreme Court cases delineate the broad parameters within which district courts are to exercise their discretion in achieving this balance. In *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), the Court approved the use of Rule 60(b)(6) to vacate a default judgment entered against the petitioner at a time when the petitioner was unrepresented by counsel, facing health and financial hardships, and serving a prison term. The Court stressed that courts should apply Rule 60(b)(6) whenever such action is appropriate to accomplish justice. *Id.* at 614–15, 69 S.Ct. at 390. In *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), however, the Court distinguished *Klapprott* as an exception to the general principle of the finality of judgments. The Court stressed that Rule 60(b)(6) should not be used to relieve a party of the consequences of voluntary litigation choices or improvident strategic decisions. The Court also found that mere financial hardship was insufficient justification for vacating a final judgment under Rule 60(b). It therefore held that the district court had not abused its discretion in denying petitioners's 60(b)(6) motion.

Applying these parameters, we find that the district court's decision to vacate the second voluntary dismissal was not an abuse of discretion. *Ackermann* prohibits a court from utilizing Rule 60(b)(6) to relieve a party from a voluntary dismissal based only on financial hardship. In this case, however, the lower court found that Mr. Randall suffered a disabling illness that would have permitted his participation in the litigation only at the risk of even greater disability. We find that the district court did not abuse its discretion in determining that this combination of health *and* financial considerations was sufficient to permit relief under Rule 60(b)(6).

■ Appellant urges, however, that the district court committed an error of law in characterizing the second voluntary dismissal as not "free, calculated, or strategic." This argument relies on the language of Rule 41. Appellant argues that a dismissal cannot be "voluntary" under Rule 41 without at the same time entailing the kind of strategic choice which the Supreme Court held in *Ackermann* is beyond repair by Rule 60(b). Appellant asserts that the only circumstances that would act to make a Rule 41 dismissal "involuntary" would be instances of fraud or misapprehension. We do not believe that Rule 41 can be so construed. The term "voluntary" in Rule 41 means that the party is filing the dismissal without being compelled by another party or the court. In other words, it does not mean that other circumstances might not have compelled the dismissal or that the party desired it. We therefore find that a dismissal may be "voluntary" under Rule 41(a)(1) without being "free, calculated, and deliberate" in the sense *Ackermann* indicates would preclude relief under Rule 60(b)(6). The district court's conclusion that this was such a case was not an abuse of discretion in light of the combination of circumstances confronting the Randalls when they decided to file for a second voluntary dismissal.

■ Finally, we note that the district court's order does not unduly prejudice Merrill Lynch. Merrill Lynch contends that it has been prejudiced by the passage of time between the second dismissal and the district court's order. But that period—just over a year—was not so lengthy as to have prejudiced Merrill Lynch's ability to defend itself in court. *Cf. Washington v. Penwell,* 700 F.2d 570, 572–73 (9th Cir.1983) (four-year delay not unreasonable in light of extraordinary circumstances); *Twentieth Century-Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir. 1981) (six-year delay unreasonable in case of liquidated-damages decree and no extraordinary circumstances). Merrill Lynch also claims that it has suffered prejudice because it must now incur additional costs to contest the Randalls' claims. Additional legal costs, however, are the inevitable result whenever a judgment is vacated. *See Werner v. Carbo,* 731 F.2d 204, 207 (4th

Cir.1984). Yet Rule 60(b) certainly contemplates that some judgments will be vacated. In the circumstances of this case, particularly given the fact that the previous, abortive litigation can hardly have imposed significant costs on Merrill Lynch, we find that the prospect of future litigation costs does not rise to the level of unfair prejudice.

### III. CONCLUSION

Rule 60(b) is the mechanism by which courts temper the finality of judgments with the necessity to distribute justice. It is a tool which trial courts are to use sparingly, but their discretion to employ it is not to be lightly overturned on review. We hold that Rule 60(b)(6) can be used to vacate voluntary dismissals resulting in final judgments, and that the district court did not abuse its discretion in relying on appellees' combination of hardships to vacate their second voluntary dismissal. The judgment of the district court is affirmed.

*It is so ordered.*

WILLIAMS, Circuit Judge, concurring and dissenting:

I agree with the majority that Rule 60(b)(6) of the Federal Rules of Civil Procedure vests courts with discretion to set aside a voluntary dismissal. However, I believe that the district court abused this discretion in vacating the Randalls' second dismissal.

The Randalls first attempted to prosecute their claim in the Northern District of California. After that court ordered the case transferred to Washington, D.C. and while a motion to dismiss was pending there, the Randalls voluntarily dismissed the action under Rule 41(a)(1). Meanwhile they started again in California, this time in the Eastern District. That court likewise ordered the case transferred to Washington, D.C.; the Randalls again voluntarily dismissed the action. Less than two months later they started yet a third litigation, presenting the claim to the National Association of Securities Dealers, Inc., for arbitration in San Francisco.

This pattern of sustained maneuvering to have their claim heard in California belies the notion that intense financial and medical pressures *compelled* the Randalls to enter the dismissals. They were quite capable of pursuing the claim, but wished to exhaust every possible gambit to assure that the litigation would occur in California. They were represented by counsel, who advised them that voluntarily dismissing the action a second time might operate as dismissal on the merits. *See* Fed.R. Civ.P. 41(a)(1). Nonetheless they proceeded with the second dismissal, without pursuing any of the precautionary steps open to them, such as seeking a stay pending arbitration or requesting the court to dismiss without prejudice under Rule 41(a)(2). On this record it is impossible to conclude that the second dismissal was other than a "free," "calculated," and "deliberate" choice that does not justify relief under Rule 60(b)(6). *See, e.g., Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950).

Nor can I agree that the Randalls' "previous, abortive litigation can hardly have imposed significant costs on Merrill Lynch." *Ante* at 1322. Twice now the Randalls have forced Merrill Lynch to gear up for litigation. Each time Merrill Lynch filed and briefed motions to transfer and motions to dismiss. Each time Merrill Lynch prevailed in getting the action transferred over the strenuous objections of the Randalls, only to have the Randalls abort the action before the motion to dismiss could be considered. Under Rule 41(d) the court could have forced them to compensate Merrill Lynch for the costs of the *first* action before permitting the second to go forward. I see no basis for concluding that these costs are not significant (and the majority has not suggested one), or for believing that the costs Merrill Lynch will have to incur preparing for trial yet a third time will not also be substantial. *Compare Werner v. Carbo,* 731 F.2d 204, 206 (4th Cir.1984) (judgment against professional corporation vacated where corporation's liability coextensive with that of principal and retrial of suit against principal required in any event).

"There must be an end to litigation someday." *Ackermann v. United States,* 340

U.S. at 198, 71 S.Ct. at 211. If this means anything, it means that the interest in repose counts as a powerful equity against re-opening a judgment under Rule 60(b)(6). Often it is the only equity. Indeed, that was the case in *Ackermann* itself, where the Court insisted that relief should be granted under Rule 60(b)(6) only under "extraordinary circumstances." *Id.* at 200, 202, 71 S.Ct. at 212, 213. The judgment against the Randalls did not result from extraordinary circumstances, but from a litigation strategy gone sour.

I would reverse.