A.W. ANDERSON, et al., Plaintiffs,

v.

CHEVRON CORPORATION, Defendant.

No. Civ.A. 94–0331(RCL).

United States District Court,
District of Columbia.

Nov. 5, 1999.

*29, 1999 Orders* at 7.

William L. Taylor, Taylor, Thiemann & Aitken, L.C., Alexandria, VA, for plaintiff.

Carlos M. Recio, Washington, DC, Richard M. Bing, Pearce & Bing, Richmond, VA, for Star Brothers, Inc.

Jeffrey Schmidt, Michael A. Conley, Pillsbury, Madison & Sutro, L.L.P., Washington, DC, W. Todd Miller, Baker & Miller, PLLC, Washington, DC, for Chevron.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

### I. Introduction

This matter comes before this court on a Rule 60(b)(6) motion filed by counsel on behalf of Richard Proffitt and Star Brothers, Inc. Both Richard Proffitt and Star Brothers, Inc. (collectively, the "Moving Plaintiffs") were two of thirteen plaintiffs who sued Chevron Corporation (hereinafter "Chevron") based on claims under both the Federal Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*, and pendent common law claims. This court granted summary judgment in favor of Chevron and dismissed all claims against Chevron with prejudice. Chevron then moved for an award of attorneys' fees which went unopposed by the plaintiffs. Pursuant to Local Rule 108, the court entered a judgment on April 16, 1997 awarding Chevron $291,044.10 in attorney's fees and costs.

On February 12, 1999 a copy of a letter from the collection counsel of Chevron was received by Moving Plaintiffs. Moving Plaintiffs claim this was the first time they became aware of this court's $291,044.10 attorneys' fee award to Chevron. Moving Plaintiffs ask this court: 1) to reopen its April 16, 1997 judgment awarding attorneys' fees; 2) once the judgment is reopened, to deny Chevron's request for attorneys' fees on the merits; and 3) to hold a hearing on the conduct on Moving Plaintiffs' prior counsel who allowed Chevron's motion for attorneys' fees to remained unopposed until the present Rule 60(b)(6) motion. For the reasons set forth herein, this court denies Moving Plaintiffs' request for relief pursuant to Rule 60(b)(6).

### II. Background

Moving Plaintiffs along with eleven other plaintiffs filed suit against Chevron in 1993. All of the plaintiffs were owners of Chevron service stations and were dissatisfied with Chevron's decision to withdraw from the area in which the plaintiffs operated. Chevron arranged for Exxon to offer franchises to the former Chevron dealers. However, plaintiffs were unhappy with the prospect of entering into a franchise agreement with Exxon as Exxon would charge much higher fees than Chevron had done.

The plaintiffs sought legal counsel and retained Richard Bing, Esq. and Gerald M. Bowen, Esq. who were both experienced Virginia attorneys. Both attorneys were experienced with the PMPA. The two attorneys brought in William Taylor, Esq., to assist with the case and to act (according to Mr. Taylor) as local counsel. All three attorneys (hereinafter "Prior Counsel") brought this action against Chevron for various claims under the PMPA for all plaintiffs and pendent state claims brought for only some of the plaintiffs.

The case was extensively litigated between 1993 and 1996 until Chevron moved for summary judgment. On August 5, 1996 this court entered a memorandum opinion and order granting Chevron's motion for summary judgment on all claims. Six of the plaintiffs were held liable for money they indisputably owed Chevron. The Moving Plaintiffs were not among the plaintiffs who were named as counter-defendants, so no monetary judgment of any kind was entered against them on August 5, 1996. On August 19, 1996 Chevron filed a Motion For Attorneys' Fees and Costs. Prior Counsel filed a consent motion for an extension of time to respond, however, they never did respond to Chevron's Motion for Attorneys' Fees. On April 16, 1997, this court signed an order granting Chevron's unopposed Motion for Attorneys' Fees and costs in the total amount of Chevron's request of $291,044.10. The

basis of Chevron's motion for attorneys' fees was exclusively grounded in the dealer agreements between Chevron and the plaintiffs who owned Chevron service stations. These dealer agreements stated that in any litigation between the parties to the agreement, the prevailing party would be entitled to recover its attorneys' fees.

The Moving Plaintiffs claim that they were "completely unaware" that their prior counsel had failed to file an opposition and that Chevron's Motion for Attorneys' Fees had been granted. They claim that they were not even informed of the existence of Chevron's motion and that neither their Prior Counsel nor Chevron informed them of the attorneys' fees award. The Moving Plaintiffs claim that they were not kept informed by Prior Counsel throughout the litigation and were abandoned by their counsel. Moving Plaintiffs' claim in their attached affidavits that:

> Attorneys Bing, Bowen, and Taylor engaged in minimal communication with their clients throughout the time the case was in active litigation. There were no regular written or oral reports, indeed no written reports or progress advisories of any kind. The litigation dragged on and the plaintiffs had to call their counsel to find out what was going on. The answer was, generally, that the case was slowly proceeding.

(Moving Plaintiffs' Mot. to Reopen at 7.) Moving Plaintiffs complain to this court that Prior Counsel failed to communicate with them with the exception of sending bills. (Moving Plaintiffs' Mot. to Reopen at 11.) The affidavit of Arturo Aloma, one of the Moving Plaintiffs, stated:

> From 1993 to 1996, Star Brothers received no written communications about the case status from our counsel. The only communications we received were bills for monies that needed to be paid to our counsel. Star Brothers was generally aware of the case status from conversations with other co-plaintiff dealers who were co-plaintiffs, i.e., Mr. Harry Land and/or Mr. James Payne. From 1993 to 1996, the only information Star Brothers received was that the case was progressing.

(Arturo Aloma Aff. at 3.) Artoro Aloma went on to state that Star Brother's former counsel Messrs. Bing, Bowen and Taylor at no time communicated the status of the case. Another Moving Plaintiff, Richard Proffitt stated in his affidavit that:

> From 1993 to 1996, the communication between Messrs. Bing, Bowen and Taylor and me were minimal. In fact, I do not specifically recall any telephone conversations. Insofar as written communications were concerned, the only documents or communications that I received from Messrs. Bing, Bowen or Taylor were requests for additional payments toward the expenses of the litigation. I paid the bills.

(Richard S. Proffitt Aff. at 3.) Proffitt went on to complain that:

> Our attorneys were supposed to communicate with those of us in the Tidewater Virginia area through James "Jay" Payne, one of our fellow dealers located in Virginia Beach, Virginia. John Payne would report to me that communications were sporadic at best and that he always had to call the attorneys to ask what was going on. Mr. Payne would report that the only information he would receive was that the litigation was progressing. I found it problematic that Messrs. Bing, Bowen and Taylor did not keep us informed of the status of the litigation. Other of my fellow plaintiffs had the same view.

(Richard S. Proffitt Aff. at 3, 4.) Moving Plaintiffs also attached the affidavit of James Payne. Mr. Payne was also one of the original plaintiffs who filed suit against Chevron. Mr. Payne complained of the lack of communication from Prior Counsel as well:

> My deposition was taken by Chevron's counsel at Chevron's offices in Washington, D.C., some time in 1994. But, following my deposition, communications with our counsel were limited. A cause of concern (and disappointment) to me, as well as other of my co-plaintiffs, was that there were extremely limited communications between our counsel and us, their clients, regarding the case. I received no written reports regarding the case or its status at any time and minimal oral communications. About the only communications I received

from counsel were invoices for additional "expense money" that was due and owing. From time to time I would call Mr. Bowen or, more often, Mr. Bing to ascertain the status of the case. I was generally told that the case was progressing and/or that the Judge had the case under advisement. (James C. Payne Aff. at 3.) Mr. Payne went on to state that he was "shocked" by the conduct of Prior Counsel for their failure to communicate the fact that Chevron had filed a motion for attorneys' fees. (*Id.*)

Moving Plaintiffs attached the affidavit of another plaintiff, Harry Land, who also complained of the failure of Prior Counsel to make any status reports and to communicate the status of the case to the group of plaintiffs. Mr. Land stated in his affidavit:

Aside from invoices, I never personally received any status reports or other direct information from our attorneys regarding the suit, its prospects or its status. What information that I had would come from Mr. Jay Payne, who maintained the most direct contact with our attorneys. However, communications between Mr. Payne and the attorneys were themselves a problem and Mr. Payne, in fact, knew little more than we did.

(Harry M. Land Aff. at 3.) Land stated that the attorneys never affirmatively communicated with any of the plaintiffs. (*Id.*) Mr. Land also stated in his affidavit that he learned the case was lost through another party and that he was shocked when he learned of the award of attorneys' fees. (*Id.*)

After being served with Moving Plaintiff's Rule 60(b)(6) Motion presently before the court, Richard Bing, Esq., one of Moving Plaintiffs' Prior Counsel, filed a Declaration of Facts. In that document Mr. Bing denies that he neglected his duty to his clients. Mr. Bing claims that he always returned calls, answered any questions that the plaintiffs had about the litigation and often had lengthy conversations with them. Mr. Bing attached a December 3, 1996 letter that was addressed to both Mr. Payne and Mr. Land, that detailed a proposed settlement agree-

ment. (Decl. of Facts Ex. 3.) In the proposed settlement agreement Chevron would agree to drop its claim to attorneys' fees as well as pre- and post-judgment interest in exchange for the dealers withdrawing their notice of appeal which had been filed with the D.C. Circuit. In addition, the December 3, 1996 letter stated that Chevron must receive releases from all dealers and payment for the amounts awarded in this court's August 5, 1996 judgment or else Chevron would pursue its claim for attorneys' fees.[1]

Mr. Bing also attached his letter of April 25, 1997 that detailed the August 5, 1996 judgment and the waning possibility of a settlement with Chevron for the amounts contained in the judgment. (Decl. of Facts Ex. 10.) The letter also mentioned the award of attorneys' fees pursuant to the default judgment filed on April 16, 1997 by this court. In the letter no direct reasoning was given as to why Chevron's Motion for Attorneys' Fees was not opposed by Plaintiffs' Prior Counsel. The letter was addressed to plaintiffs Harry Land, James Payne, Richard S. Proffitt and Ed Aloma among others. (*Id.*)

### III. Analysis

#### A. *Extraordinary Circumstances under Rule 60(b)(6).*

Moving Plaintiffs request that this court reopen the default judgment entered on April 16, 1997 under Rule 60(b)(6) because they were abandoned by their counsel and can mount a meritorious defense to Chevron's motion for attorneys' fees. Before this court can reexamine Chevron's Motion for Attorneys' Fees, this court must determine whether the Moving Plaintiffs have the ability to reopen the court's default judgment under Rule 60(b)(6).

Rule 60(b)(6) allows a court to alter or provide relief from a final order "upon such terms as are just," for any "reason justifying relief from the operation of the judgment." Because of the all inclusive nature of the foregoing language, the Supreme Court has

---

1. Moving Plaintiffs do not even argue that they ever provided a release of claims to Chevron, and the record is clear that no settlement was ever effectuated between Moving Plaintiffs and Chevron.

stated that Rule 60(b)(6) should only be used in "extraordinary circumstances." See *Pioneer Investment Serv. Co. v. Brunswick Assoc. Limited Partnership*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1141 (D.C.Cir.1988). Therefore this remedy should only be "sparingly used." *Twelve John Does*, 841 F.2d 1133, 1140, citing *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572 (D.C.Cir.1980). A court must balance the need for the finality of judgments with the demand that justice be done. Two Supreme Court cases delineate the territory within which courts may exercise their discretion in granting relief under Rule 60(b)(6).

The Supreme Court in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099 (1949), approved the use of Rule 60(b)(6) to vacate a default judgment entered against the petitioner when the petitioner was not represented by counsel, facing health problems as well as serving a prison sentence. In *Klapprott*, "the Court stressed that courts should apply Rule 60(b)(6) whenever such action was appropriate to accomplish justice." *Randall v. Merrill Lynch, et al.*, 820 F.2d 1317, 1321 (D.C.Cir.1987). However, the Supreme Court erected a clear boundary that the lower courts cannot cross when granting relief under Rule 60(b)(6). In *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Court held that relief under Rule 60(b)(6) was not warranted as petitioner had been represented by counsel and had chosen not to appeal the decision denying him citizenship.

Rule 60(b)(6) cannot operate as a substitute for an appeal. *Twelve John Does*, 841 F.2d at 1141. Therefore, a party who has not pursued an appeal may obtain relief under Rule 60(b)(6) only if there are "circumstances ... so extraordinary as to bring him within *Klapprott* or Rule 60(b)(6)." *Id.* at 1141 (quoting *Ackermann*, 340 U.S. at 202, 71 S.Ct. 209). The "extraordinary circumstances" would in effect remove the party's ability to choose, making the decision not to appeal an involuntary one. See *Twelve John*

*Does*, 841 F.2d at 1141; see also *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute*, 500 F.2d 808 (D.C.Cir.1974); *Randall v. Merrill Lynch, et al.*, 820 F.2d 1317 (D.C.Cir.1987). The Supreme Court held that, unlike the petitioner in *Ackermann*, the petitioner in *Klapprott* had his ability to defend himself removed and relief under Rule 60(b)(6) could follow. *Ackermann*, 340 U.S. at 200, 71 S.Ct. 209. However, free, calculated and deliberate choices are not to be relieved from through the use of Rule 60(b)(6). *Id.* at 198, 71 S.Ct. 209.

### B. *Attorney Neglect as Exceptional Circumstances.*

This Circuit has ruled that in certain situations an attorney's neglect may qualify as exceptional circumstances giving a party the ability to obtain relief under Rule 60(b)(6). See *Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C.Cir.1977); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (D.C.Cir.1964). In *Jackson v. Washington Monthly Co.*, this Circuit held a serious dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief under Rule 60(b)(6). *Jackson*, 569 F.2d at 122. When a client does not knowingly and freely acquiesce in his attorney's neglectful conduct, but instead is misled into believing that his attorney is industrious, dismissal is not only a harsh step but one for which the circumstances provide little support for an agency theory as a rationale. *Jackson*, 569 F.2d at 123 n. 18 (citing *Thane Lumber Co. v. J.L. Metz Furniture Co.*, 12 F.2d 701, 703 (8th Cir.1926)).

However the Supreme Court has held that clients must be held accountable for the acts and omissions of their attorneys. *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In *Link v. Wabash R. Co.* the Supreme Court held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorneys' failure to attend a scheduled pretrial conference. *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). "We found no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused

conduct imposes an unjust penalty on the client." *Link v. Wabash R. Co.*, 370 U.S. at 633, 82 S.Ct. 1386. The Court wrote:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* at 633–634, 82 S.Ct. 1386 (quoting *Smith v. Ayer*, 101 U.S. 320, 25 L.Ed. 955 (1879)). This principle also served as the foundation for the Court's decision in *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), which held that a client could be penalized for counsel's late filing of a tax return. The Court has also held that the proper focus as to whether a respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is "upon whether the neglect of respondents and their counsel was excusable." *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489. If the lawyer had failed to make a filing, only through a showing of excusable neglect on the part of both the lawyer and the client could relief be granted under the excusable neglect doctrine. The four dissenting justices in *Pioneer* agreed with this approach: "[T]he Court of Appeals held the neglect excusable nonetheless for two reasons. First, it thought it inequitable to saddle the client with the mistakes of its attorney. The Court today properly rejects that rationale." *Id.* at 405–06, 113 S.Ct. 1489.

There is a small measure of inconsistency between the D.C. Circuit's use of equitable principles in not holding a purely innocent and misled client liable for the neglect of counsel and the Supreme Court's decisions in *Link* and *Pioneer*. But this court need not address this inconsistency any further. Even under the slightly more relaxed standard that the D.C. Circuit used in two deci-

sions, which allow a client to avoid the consequences of his counsel's malpractice, Moving Plaintiffs still fail to show circumstances that will allow this court to grant relief under Rule 60(b)(6). See *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (D.C.Cir.1964) (holding client is not liable for actions of attorney who misled client as to the status of case), and *Jackson v. Washington Monthly Co., et al.*, 569 F.2d 119 (D.C.Cir.1977).

1. *No Extraordinary Circumstances Exist.*

▮ The decision not to file an opposition to Chevron's Motion for Attorneys' Fees was by any measure a calculated decision made by Prior Counsel. The record shows that Prior Counsel had filed for an extension of time within which to respond to Chevron's Motion for Attorneys' Fees. Mr. Bing stated that a settlement agreement existed in which Chevron would agree to drop its claim for attorneys' fees. The earliest documentation of this fact is provided in the December 3, 1996 letter from Mr. Bing to some of the plaintiffs. No written settlement agreement is in the record and it does not appear that one ever existed. Prior Counsel clearly had notice of Chevron's Motion for Attorneys' Fees but decided for whatever reason to allow the motion to remain unopposed.[2] This court questions the wisdom of allowing Chevron's motion to remain unopposed even as the undocumented settlement agreement began to fall apart. For Rule 60(b)(6) purposes, the decision of Prior Counsel to allow Chevron's motion to remain unopposed, however disastrous that decision may prove to be, was clearly a conscious choice made freely in the course of this litigation. Decisions not to oppose an adversary's motion on the basis of a settlement agreement are certainly made every day. The decision not to file an opposition was not, and is not, an extraordinary circumstance.

Prior Counsel elected to take no measure whereby if the settlement agreement failed, they could have promptly filed an opposition with this court. No attempt was made to allow for a longer time period within which to finalize the settlement agreement before the

---

**2.** An April 17, 1999 letter from Mr. Bing states that there existed no effective defense to Chevron's Motion for Attorneys Fees as they were contractually bound to pay Chevron the attorneys' fees and costs where Chevron was the prevailing party in the litigation.

deadline for filing an opposition to Chevron's motion came due. Prior Counsel was not disengaged from the litigation, but knowingly allowed Chevron's motion to remain unopposed.

The Supreme Court held in *Link v. Wabash R. Co.* that a litigant who has voluntarily chosen her counsel cannot avoid the consequences of the acts or omissions or the strategic maneuvers of her counsel. *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). This court has held that a client would be held bound by the strategic choices of her counsel even though they later turn out to be improvident. *Douglas v. Kemp*, 721 F.Supp. 358 (D.D.C. 1989). In *Douglas v. Kemp* counsel made a "strategic decision not to intervene in the summary judgment process" even though this proved fatal to the plaintiffs' case. *Id.* at 361. "Rule 60(b) cannot, therefore be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Id.* at 361 (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d at 577 (D.D.C.1980)). Granting relief under Rule 60(b)(6) would be rescuing Moving Plaintiffs from the strategic choices that Prior Counsel made and therefore would directly contradict the Supreme Court's decision in *Ackermann*. As stated before, the Supreme Court ruled in *Ackermann* that "free, calculated, deliberate choices are not to be relieved from." *Ackermann*, 340 U.S. at 198, 71 S.Ct. 209. Further all nine justices in *Pioneer* agreed that a court must hold clients accountable for the acts or omissions of their attorneys. *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489. The Court stated:

> There is one aspect of the Court of Appeals' analysis, however, with which we disagree. The Court of Appeals suggested that it would be inappropriate to penalize respondents for the omissions of their attorney, reasoning that 'the ultimate responsibility of filing the ... proofs of claim rested with respondents' counsel.' Ibid. The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the

court ordered bar date. In this the court erred.

*Id.* at 396, 113 S.Ct. 1489. The decisions of Prior Counsel must be imputed to Moving Plaintiffs. Moving Plaintiffs ask for relief from voluntary decisions that Prior Counsel clearly made. This court finds that no extraordinary circumstances exist that would allow for relief under Rule 60(b)(6) because the decision of Prior Counsel to not file an opposition was clearly deliberate. No evidence has been proffered to suggest otherwise.

### 2. *Moving Plaintiffs Demonstrated Acquiescence.*

The affidavits of Proffitt and Aloma state that they received almost no information from Prior Counsel concerning the status of the litigation against Chevron. According to the affidavits of Proffitt and Aloma, during the litigation, which lasted for three years, little or no periodic updates were provided by counsel. The only written communication from Prior Counsel came in the form of attorney fee bills. If these statements are true, then Moving Plaintiffs acquiesced in this behavior of Prior Counsel over a number of years. This court cannot see why Moving Plaintiffs are surprised that they were not notified of Chevron's Motion for Attorneys' Fees when they have stated that throughout the course of the litigation Prior Counsel kept them in the dark as to the status of the case. Moving Plaintiffs by their own statements acquiesced in a situation in which their attorneys did not report the status of the case. Moving Plaintiffs knew that they did not know what was occurring in the litigation. Moving Plaintiffs took little if any action to rectify the alleged failure of Prior Counsel to be responsive to their need to be informed as to the status of the case. It should have come as no surprise to the Moving Plaintiffs that they were not notified of Chevron's Motion for Attorneys' Fees and of the subsequent judgment.

### 3. *Moving Plaintiffs Were Not Misled.*

Even if this court were to allow Moving Plaintiffs to escape from the consequences resulting from the deliberate choices of Prior

Counsel, under the decisions of this Circuit they still fail to show circumstances that rise to the level requiring relief under Rule 60(b)(6). Moving Plaintiffs rely on two decisions of the D.C. Circuit as precedence for the relief they seek.

Moving Plaintiffs rely on *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C.Cir.1964), and *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir.1977). Their reliance on these decisions is not without merit but is nonetheless misplaced. In both of these cases the extraordinary circumstance existed where clients were misled (if not outright lied to) by their attorneys. In *Jackson* the attorney lied about the existence of the litigation as the case had been dismissed. *Jackson,* 569 F.2d at 122. Moving Plaintiffs offer no evidence that they were misled by Prior Counsel. As stated hereinbefore, Moving Plaintiffs could not have been misled as they acquiesced in Prior Counsel's alleged failure to make any status reports at all, even misleading ones.

## IV. Conclusion

The burden of undermining a default judgment that is two years old rests heavily upon Moving Plaintiffs. Moving Plaintiffs have not demonstrated extraordinary circumstances that rise to the level required for this court to have the ability to exercise its discretion in to set aside the judgment of April 16, 1997. Further, the default judgment entered on that date is not manifestly unjust. This court is troubled by the choice of Prior Counsel to not file an opposition to Chevron's Motion for Attorneys' Fees. Unfortunately for Moving Plaintiffs, relief cannot be granted under Rule 60(b)(6) from "strategic choices that later turn out to be improvident." *Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980). Moving Plaintiffs voluntarily chose Prior Counsel as their representative in the action, and they cannot now avoid the consequences of the acts or omissions of this freely selected agent. *Link v. Wabash R. Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). If Moving Plaintiffs believe that Prior Counsel's decision not to file an opposition falls sub-stantially below what is reasonable under the circumstances, then Moving Plaintiffs' remedy is against Prior Counsel in a suit for malpractice. *Link v. Wabash R. Co.,* 370 U.S. at 634 n. 10, 82 S.Ct. 1386. Moving Plaintiffs' Rule 60(b)(6) Motion to Reopen the April 16, 1997 judgment is hereby denied.

A separate order shall be issued this date.