LUALEMANA E. FAOA, Plaintiff

v.

SOSENE ASIFOA and LEFOTU TUILESU, Defendants

LUALEMANA E. FAOA for LUALEMANA FAMILY and
VILLAGE OF A'ASU, and TUITELE K.A. LE'OSO for
VILLAGE OF LEONE, Plaintiffs/Objectors

v.

A'OLOAU VILLAGE COUNCIL, Defendant/Claimant

A.U. FUIMAONO and the VILLAGE OF A'OLOAU, Plaintiffs

v.

TOLUAO FETALAIGA, Defendant

TUANAITAU TUIA, AVA VILI, TOLUAO FETALAIGA for
themselves and the VILLAGE OF PAVA'IA'I, Intervenors

LEPUAPUA STANLEY MASSEY UTU, for himself and on behalf
of the UTU FAMILY, Intervenor

TUILEFANO VAELAA, TUIAGAMOA, TUIOLEMOTU, and
TUITASI for "AIGA AITULAGI," Intervenors

High Court of American Samoa
Land and Titles Division

151

LT No. 29-86
LT No. 41-86
LT No. 12-87

December 10, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Lualemana and Tuitele, Afoa L.S. Lutu
For Asifoa and Tuilesu, Charles V. Ala'ilima
For Fuimaono and the village of A'oloau, Gata E. Gurr
For Toluao, Fai'ivae A. Galea'i
For Tuana'itau, Tau'ese P.F. Sunia
For Utu, Togiola T.A. Tulafono
For Aiga Aitulagi, Tuiasosopo Mariota II

On Motion for Reconsideration or Relief From Judgment:

This motion for reconsideration was filed thirty-five days after the entry of judgment, which is twenty-five days later than the statutory deadline. A.S.C.A. § 43.0802(a) provides that the filing of a motion for

152

new trial within ten days of the announcement of judgment is a mandatory prerequisite to appeal. Such a motion may be styled a motion for "reconsideration" rather than for new trial so long as it is filed within the ten-day deadline and clearly apprises the trial court of the particular errors assigned to its decision.

An untimely motion for reconsideration or new trial should ordinarily be denied for want of jurisdiction. Because the present movant, Toluao Fetalaiga, maintained that he had not been represented by counsel at trial and had therefore not been notified of the judgment against him, we construed it as a motion for relief from judgment under T.C.R.C.P. Rule 60(b) and set it for hearing as such.

At the hearing we heard Toluao's testimony. The record also contains documentary evidence concerning Toluao's representation by counsel. The facts are as follows:

1) Toluao is a matai of the village of Pava'ia'i. He originally entered these consolidated cases in 1986, as an intervenor in LT No. 29-86. This was an action brought by Lualemana, the principal chief of the neighboring village of A'asu, against certain residents of yet another neighboring village, called A'oloau, whom Lualemana said were occupying his land.

2) Toluao's intervention in LT No. 29-86 was not motivated by any dispute with either Lualemana or the named defendants in the case. Rather, it was part of an effort to litigate an altogether different dispute with A.U. Fuimaono, principal matai of A'oloau. Fuimaono had previously intervened in LT No. 29-86 as a defendant "for himself and on behalf of the village of A'oloau," to assert the proposition that there was a well-settled boundary between the two villages and that Lualemana, not the A'oloau defendants, was on the wrong side of the line.

3) Fuimaono and the various matai composing the Village Council of A'oloau had also offered a survey for registration in the office of the Territorial Registrar, purporting to encompass the boundaries of the village and to be "communal land of the village of A'oloau." Several people had objected to this survey within the statutory sixty-day time limit for such objections, and the dispute had been referred to the High Court where it was designated LT No. 41-86. Neither Toluao nor anyone from the village of Pava'ia'i had objected. Pava'ia'i did, however, regard some of the land within the A'oloau survey (an area

called "Lago") as really being in Pava'ia'i, and Toluao had begun to plant crops on part of this land. (The other parties maintained that Toluao had only recently moved into the area, and at trial we found this to be the case.) It was in order to litigate this disagreement (the registration by A'oloau including "Lago") that Toluao and two other Pava'ia'i chiefs sought to intervene in LT No. 29-86 (the injunctive action having nothing to do with "Lago"). They appeared "for themselves and the village of Pava'ia'i."

4) Toluao and his two co-applicants for intervention were represented by counsel Albert Mailo. The motion to intervene was granted without objection by any party.

5) In 1987 Fuimaono brought a separate injunctive action against Toluao. Fuimaono again appeared "for himself and on behalf of the village and people of Aoloau." The complaint alleged that Toluao had recently begun occupying land belonging to various A'oloau people within the area called "Lago" and destroying their crops. This dispute was precisely the one that had caused Toluao and the other two Pava'ia'i chiefs to intervene in LT No. 29-86. Toluao was again represented by counsel Mailo, who filed an answer and appeared at various pre-trial hearings. This new case was designated LT No. 12-87.

6) In January 1988 the three cases were consolidated and set for trial.

7) Various other parties were subsequently allowed to intervene. The only one that matters for the purpose of this motion is the Utu family of A'oloau. They alleged that they owned land in the "Lago" area; that these lands were within the survey offered by the Village of A'oloau but in fact belonged to the Utu family rather than to the entire village; and that Toluao had recently begun going on their land and destroying their crops.

8) The trial was continued several times. In pleadings having to do with these continuations and other pre-trial matters, counsel Mailo sometimes referred to himself as "counsel for . . . Tuana'itau Tuia, Ava, [and] Toluao" (the three named Pava'ia'i chiefs) and sometimes simply as "counsel for Pava'ia'i." This apparently reflected an agreement among Toluao, his two co-intervenors, and the rest of the Pava'ia'i Village Council that they would litigate the case "as a village." It is clear from Toluao's testimony at the recent hearing that he agreed to this arrangement, although he appears to have been the only Pava'ia'i party

154

who actually occupied any land in the disputed area. According to the arrangement, the party through whom "the village" communicated with its counsel was Tuana'itau Tuia.

9) In 1989 counsel Mailo moved to withdraw as counsel for the Pava'ia'i parties and for some other parties he had been representing. He appended a consent form signed by several clients, including Toluao, and certified that he had "contacted his clients about it and they will retain new counsel." The Court granted the motion, contingent on the parties' actually retaining new counsel.

10) Later in 1989 counsel Tau'ese P. Sunia entered an appearance on behalf of "Tuia and the Village of Pava'ia'i." Toluao testified that this was also pursuant to the arrangement whereby the various Pava'ia'i parties would litigate "as a village" and that Tuia would be the one actually handling the litigation.

11) The case was finally tried in May 1989. The Pava'ia'i parties put on two witnesses, Tuana'itau Tuia and an elderly chief of Pava'ia'i. These witnesses testified to the effect that "Lago" had long been part of Pava'ia'i and that parts of it had long been occupied by Toluao and other Pava'ia'i people. Witnesses for other parties testified that Toluao had only recently begun moving into the area.

12) At the recent hearing Toluao testified that he had been present throughout the trial of the consolidated cases. He said he had wanted to testify at the trial and had talked to Tuana'itau Tuia and counsel Tau'ese about it, but that they had insisted it would be better just to present the testimony of Tuana'itau (the "sa'o of the village" and also the Speaker of the territorial House of Representatives) and the elderly chief Pagofie. Toluao acquiesced in this decision.

13) During the trial the Pava'ia'i parties made a stipulation with the Utu family. It was signed by Toluao, by Tuana'itau, and by counsel Tau'ese as "Attorney for Tuana'itau F. Tuia, Toluao Fetalaiga and all the Pava'ia'i Village Claimants." At the hearing on the present motion Toluao stated that he had not really agreed with the stipulation and had had no idea how much land it conceded to the Utu family, but had signed at the request of Tuana'itau.

14) The Court allowed counsel three weeks for post-trial submissions and then took the case under advisement. A decision was rendered on August 6, 1990. The Court held that the area called "Lago"

155

had been occupied by various families of A'oloau for about forty years and that Pava'ia'i had only recently begun to assert or reassert its claim. Specifically, the Court held that Toluao had only begun to occupy this area in the mid-1980s and had thereby displaced the plantation of various A'oloau families. Toluao was enjoined from further activities in the area.

15) The Clerk of Court immediately gave copies of the decision to all counsel, including counsel Tau'ese. Counsel Tau'ese then consulted with Tuana'itau Tuia. It appears that Tuana'itau did not notify Toluao, who was then on an off-island trip. It is not clear whether Tuana'itau consulted with other members of the Village Council. In any event, after his consultation with Tuana'itau about the decision, counsel Tau'ese did not file a motion to reconsider on behalf of the Pava'ia'i parties.

16) We do not know exactly when Toluao did find out about the decision. About a month after the decision was rendered, a person who had been occupying land in the area by permission of Toluao wrote a long letter to one of the attorneys in the case complaining about the decision and asking if there was anything he could do about it. A few days later the present "Motion to Reconsider" was filed by yet another counsel, who said he had not talked to Toluao about it but had talked to members of his family.

It appears from this evidence that Toluao is asking the Court to relieve him not of the consequences of mistake, inadvertence, or excusable neglect, but of a deliberate strategic decision he made early in the course of this litigation. This was the decision to litigate "as a village" and to let Tuana'itau consult with counsel and make the decisions.

The perceived advantages of this arrangement were presumably that Toluao would not have to retain his own counsel; that since A'oloau was litigating "as a village" on behalf of Toluao's rival claimants in the area, it might be strategically wise to make it clear that the whole village council of Pava'ia'i was behind Toluao's claim; and that, under the circumstances, it might be wise to bolster Toluao's claim based on occupation (which everyone else in the neighborhood insisted had begun only recently) by subsuming it within a broader historical claim by Pava'ia'i.

Toluao may also have believed that Tuana'itau was a man experienced in these matters who could handle the litigation more effectively than Toluao himself would be able to do. Toluao had made at least one similar decision in another recent land dispute, representing to the Court that the Toluao family and the Tuana'itau family were "part of the same family" and that Tuana'itau was the sa'o of the whole family; the purpose of this representation was to enable Tuana'itau to represent the interests of both families "pro se." The Court was told at that time that Toluao could not find an affordable lawyer (counsel Mailo having withdrawn in that case as in this one) and did not wish to represent himself. *See Leomiti v. Toluao*, LT No. 35-82.

Nor is it at all clear that Tuana'itau committed "neglect" by not consulting with Toluao about his decision not to move for reconsideration. Although prudence would ordinarily dictate such consultation, Toluao does not allege that it was any part of the Pava'ia'i parties' prior arrangement. Indeed, it appears that Tuana'itau had consulted with Toluao during the course of the litigation only when he needed Toluao's signature on something; yet Toluao had not sought to terminate the arrangement --- as he was free to do at any time during the litigation by retaining independent counsel or by notifying the Court that he wished to proceed *pro se* --- and had even gone along with Tuana'itau's decisions that he, Toluao, should not testify and that he should sign the Utu stipulation. Toluao evidently knew that counsel Tau'ese would consult only with Tuana'itau when the Court issued its decision. He does not allege in support of the present motion that he told Tuana'itau he wished to be consulted about whether to move for reconsideration, or even that he left Tuana'itau or counsel Tau'ese any information about how to get in touch with him while he was off-island.

A motion for reconsideration under Rule 60(b) cannot to be used as a substitute for appeal by one who has missed the deadline for appeal. Although courts have made exceptions to this rule when the party did not learn of the judgment prior to the appeal deadline through some fault of the clerk or another court official, it is an abuse of discretion for the court to use relief from judgment to allow an appeal where the party missed the deadline through his own fault or through the fault of his lawyer. *Spika v. Village of Lombard*, 763 F.2d 282, 285 (7th Cir. 1985), and authorities cited therein.

Nor can a Rule 60(b) motion "be employed simply to rescue a litigant from strategic choices that later turn out to be improvident."

*Good Luck Nursing Home, Inc., v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

We conclude that Toluao was represented by counsel at all times during the litigation, but voluntarily entered into an arrangement whereby a single counsel would represent all the named Pava'ia'i parties and would deal only with Tuana'itau. Having chosen thus to subsume his claim within that of the village and to leave its fate in the hands of the village's principal spokesman, Toluao now seeks relief from a decision made by this agent. Such relief cannot be granted.

Accordingly, the motion is denied. It is so ordered.