Nicholas BERNHARDT, by his father
and next best friend, John
BERNHARDT, Petitioner,

v.

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SER-
VICES, Respondent.

No. 00–592V.

United States Court of Federal Claims.

Oct. 6, 2005.

Clifford J. Shoemaker, Shoemaker & Associates, Vienna, VA, attorney of record for petitioner.

Melonie J. McCall, with whom were Assistant Attorney General Peter D. Keisler, Director Timothy P. Garren, Deputy Director Mark W. Rogers, and Assistant Director Vincent J. Matanoski, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent.

## REMAND ORDER

WIESE, Judge.

This action is before the court on petitioner's motion for review of the special master's May 10, 2005, order, holding that petitioner's *motion for voluntary dismissal of suit pursuant to Vaccine Rule 21(a) divested the special*

master of jurisdiction over petitioner's claim. Specifically, the special master declined to consider petitioner's motion to withdraw the voluntary dismissal and for judgment on the record, concluding that "the moment Petitioner perfected [the motion for voluntary dismissal], his petition ceased to exist before this Court. Nothing can be done to resurrect it. Any action taken by the Court or by the parties thereafter is of no effect." *Bernhardt v. Secretary of Dep't Health & Human Servs.*, No. 00–592V, slip op. at 2 (Fed.Cl. May 10, 2005).

The parties have briefed the issues presented in petitioner's motion for review and the court heard oral argument on September 6, 2005. For the reasons set forth below, we hereby vacate the special master's May 10, 2005, order, grant petitioner's motion to withdraw the voluntary dismissal, and remand the petition to the special master for further consideration.

### FACTS

On October 2, 2000, petitioner, John Bernhardt, filed a claim for compensation under the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), 42 U.S.C. §§ 300aa–1 to –34 (2000), on behalf of his minor son, Nicholas Bernhardt. Petitioner alleged that Nicholas's impaired physical condition—diagnosed as insulin dependant diabetes mellitus—was caused by the administration of childhood vaccines, including a hepatitis B vaccination on October 3, 1997.

In the course of compiling the medical records necessary to support petitioner's claim,[1] it came to light that John Bernhardt did not have legal custody of his son, thus prompting respondent to raise the question of whether John Bernhardt was authorized under state law to sue on his son's behalf and thus whether he was qualified to act as a "legal representative" under the Vaccine

---

1. The Vaccine Act requires that a petition seeking compensation for a vaccine-related injury be accompanied by all relevant medical records, including maternal prenatal and delivery records, newborn hospital records, vaccination records, pre- and post-injury physician or clinic records, and all post-injury inpatient and outpatient records. 42 U.S.C. § 300aa–11(c)(2). The Act further specifies that in the event of the unavailability of any of the prescribed records, the petitioner shall provide an explanation as to the reasons for their unavailability. 42 U.S.C. § 300aa–11(c)(3).

Act.[2] Petitioner's standing to sue was still an open question when, on November 7, 2003, petitioner filed a motion for voluntary dismissal without prejudice pursuant to Vaccine Rule 21(a).[3]

Three months later, on February 11, 2004, petitioner filed a motion to withdraw the voluntary dismissal and for judgment on the record. Respondent addressed this motion in a March 19, 2004, brief, arguing that petitioner's demand for judgment was premature.[4] The first order of business, respondent maintained, was the resolution of the still-open question of whether, despite his non-custodial status, John Bernhardt qualified as a legal representative under the Vaccine Act and thus had standing to sue in this court. Petitioner, in turn, argued that under the Vaccine Act, his status as a parent qualifies him as a legal representative authorized to file suit on behalf of his minor son.

Although neither party addressed the legal significance of petitioner's earlier motion for voluntary dismissal under Vaccine Rule 21(a), that issue subsequently came into focus following the issuance of *Robinson v. Secretary of Dep't Health & Human Servs.*, No. 04–0041V, 2004 WL 2677197 (Fed.Cl. Nov.3, 2004), in which the chief special master ruled that a voluntary dismissal under Vaccine Rule 21(a) "automatically terminates the ac-

tion … [and] following the dismissal, the special master no longer has jurisdiction over the case." *Id.* at *3.

Mindful of the outcome in *Robinson,* the special master directed the parties to file briefs addressing the legal significance of petitioner's motion for voluntary dismissal. Upon reviewing the parties' briefs, the special master issued a May 10, 2005, order concluding that petitioner's November 7, 2003, motion for voluntary dismissal under Vaccine Rule 21(a) served as the required notice that he was exercising his right to dismiss pursuant to that rule, and thus that petitioner's claim terminated upon the filing of that document.

Petitioner filed a motion for reconsideration on May 16, 2005, but the special master denied that motion by order dated May 31, 2005. In his order, the special master stated, *inter alia,* that "even if Petitioner had been or were allowed today to pursue withdrawal [of the petition] under § 21(b) [of the Vaccine Act], the spectre of whether he is a valid 'legal representative' would not disappear as it goes to the heart of whether he was allowed to bring the petition in the first place." *Bernhardt v. Secretary of Dep't Health & Human Servs.,* No. 00–592V, slip op. at 3 (Fed.Cl. May 31, 2005).[5] The special

---

**2.** The issue concerning petitioner's standing to sue stems from the proposition, noted in 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* 482 (1987), that where a "decree is silent concerning which parent is authorized to make decisions about the child's care, education, religion or training, that authority will be attributed to the child's custodian." *See, e.g., Matter of Meyers,* 139 Misc.2d 265, 528 N.Y.S.2d 778, 779 (N.Y.Sup.Ct.1988) (finding that a parent cannot sue on an infant child's behalf where the parent neither serves as the infant's legal guardian nor possesses legal custody of the infant); *Mills v. Phillips,* 407 So.2d 302, 304 (Fla.Dist.Ct. App.1981) (holding that "a non-custodial parent, absent some extraordinary circumstance, has no standing to sue … on behalf of his or her [minor] children").

**3.** Vaccine Rule 21(a) provides:
A petition may be dismissed without order of the special master or the court (1) by petitioner's filing of a notice of dismissal at any time before service of respondent's report, or (2) by the filing of a stipulation of dismissal signed by all parties who have appeared in the proceeding. Unless otherwise stated in the notice of

dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal may, in the discretion of the special master or the court, be deemed to operate as an adjudication upon the merits when filed by a petitioner who has previously dismissed the same claim.

**4.** For the sake of completeness in our recitation of the facts, we should add that the special master, prior to the receipt of respondent's brief of March 19, 2004, issued an "Entitlement Decision" granting petitioner's motion to withdraw the voluntary dismissal and for judgment on the record. Before the entry of judgment, however, the special master, acting on his own initiative, entered an order on February 24, 2004, withdrawing the entitlement decision. Neither the issuance of the entitlement decision nor its subsequent withdrawal are relevant to the arguments we consider here.

**5.** Section 21(b) of the Vaccine Act allows a petitioner to withdraw a petition where (i) the special master has failed to enter a decision on the petition within 240 days after its filing (excluding

master then added that "[r]egardless, the whole business is moot," *id.*, because the petition was voluntarily dismissed. On June 9, 2005, petitioner sought review here.

DISCUSSION

A.

As the facts recited above reveal, this appeal comes to us now with the issue of petitioner's standing unresolved. It is to that issue that we turn first.

Under the provisions of the Vaccine Act, a petition seeking compensation on behalf of a minor may only be filed by the minor's "legal representative," 42 U.S.C. § 300aa–11(b)(1)(A), a term which the Act defines as "a parent or an individual who qualifies as a legal guardian under State law," 42 U.S.C. § 300aa–33(2). Based on this provision, respondent argued before the special master that because petitioner did not have legal custody of his son, his right to act as his son's legal guardian was therefore in doubt. That doubt, respondent further posited, consequently calls into question the court's own authority to act, since under the terms of the statute the identity of the claimant affects the court's power to hear the case. Although urged by the parties to resolve this issue, the special master did not do so. Instead, the special master concluded that petitioner's motion for voluntary dismissal extinguished the court's power to act, hence rendering moot the question of whether the court had possessed jurisdiction at the start.

 We cannot endorse this reasoning. Where jurisdiction is put into issue, it is incumbent upon the court to decide the question of whether the court has the power to grant the relief being requested. *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C.Cir.1996) (subject matter jurisdiction "goes to the foundation of the court's power to resolve a case, and the court is obliged to address it sua sponte"). This is true even when, as here, the litigation purportedly has been terminated through a voluntary dismissal. If the court lacked jurisdiction to hear the case in the first instance, a voluntary dismissal would be a nullity—an action without legal consequence. Where the requisites for jurisdiction have been satisfied, however, a voluntary dismissal of suit without prejudice would carry with it the distinct hazard, as specified by the applicable rule of procedure, that a later voluntary dismissal of an action based on or including the same claim would be deemed "in the discretion of the special master or the court . . . an adjudication upon the merits." Vaccine Rule 21(a). Thus, the end results are not the same: where jurisdiction exists, a voluntary dismissal may limit a petitioner's future rights.

 In an effort to resolve the jurisdictional issue now before it, this court issued an order on August 15, 2005, directing petitioner to file a memorandum of law addressing the question of whether, as a non-custodial parent, petitioner retains the right under state law to sue on behalf of his minor son. In his response, petitioner argues that under the terms of the Vaccine Act, his non-custodial status is not relevant to his right to sue because the Act identifies a parent as a legal representative entitled to sue on a minor's behalf—a status he satisfies even in the absence of custody. Petitioner goes on to say, however, that even if the court should find it necessary to look beyond the terms of the Vaccine Act to ascertain his standing to sue, state law confirms his eligibility to bring this action on his son's behalf. Specifically, petitioner relies upon Rule 2–202 of the Maryland Rules of Practice and Procedure, a rule adopted by the Maryland Court of Appeals under the authority of that state's constitution.[6] Rule 2–202 reads in relevant part as follows:

(a) The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.

any period of suspension or remand), or (ii) the court fails to enter a judgment within 420 days after the date of filing of the petition (excluding any period of suspension or remand). 42 U.S.C. § 300aa–21(b).

**6.** Article IV, section 18, of the Constitution of Maryland provides in relevant part:

When a minor is in the sole custody of one of its parents, that parent has the exclusive right to sue on behalf of the minor for a period of one year following the accrual of the cause of action, and if the custodial parent fails to institute suit within the one year period, any person interested in the minor shall have the right to institute suit on behalf of the minor as next friend upon first mailing notice to the last known address of the custodial parent.

Md. Rule 2–202(b).

Respondent concedes that under this rule, assuming compliance with its requirements, petitioner would be entitled to sue on behalf of his son. Respondent points out, however, that under the terms of the rule, petitioner was obligated to provide the custodial parent (Nicholas's mother) with a mailed notice of his intention to initiate a suit on their son's behalf. Because proof of mailing of such a notice has not been demonstrated in the record before the court, respondent argues that the question remains whether petitioner is in fact entitled to invoke this rule in his favor.

We do not think respondent's concern is well founded. The record in this case leaves no doubt that the custodial parent was well aware of the claim for compensation filed on her son's behalf, if not prior to its filing then at least in time sufficient to have asserted her rights as the custodial parent. Indeed, the record indicates that although invited to join this litigation, she declined to do so. Thus, there is no want of meaningful notice here.

During oral argument, petitioner's counsel urged the court, in the interest of uniformity of result among vaccine litigants, to resolve the jurisdictional issue raised in this case by adhering to a literal interpretation of the Vaccine Act's use of the term "parent" rather than by drawing upon state law distinctions between custodial and non-custodial parents to define a petitioner's right to sue. We decline this invitation. To decide the jurisdictional issue presented here, it is enough to say that petitioner's right to sue as a noncustodial parent is confirmed by Maryland law. Whether that right would exist under the Vaccine Act even in the absence of sup-porting state law is a matter we do not decide.

### B.

■ Proceeding, then, from the proposition that petitioner has standing to sue in this court, respondent next argues that under the Vaccine Act, this court's review authority is limited to motions seeking review of a special master's "decision"—i.e., a determination regarding a petitioner's entitlement to compensation under the Vaccine program—and does not extend to rulings of the sort reflected in the special master's May 10, 2005, order. Once again, this court's jurisdiction is put into issue.

Respondent's argument is founded upon the language of section 12 of the Vaccine Act, which provides that "[a] special master to whom a petition has been assigned shall issue a decision on such petition with respect to whether compensation is to be provided under the [Vaccine] Program...." 42 U.S.C. § 300aa–12(d)(3)(A). Subdivision (e) of that section in turn provides that "[u]pon issuance of the special master's decision, the parties shall have 30 days to file with the clerk of the United States Court of Federal Claims a motion to have the court review the decision," 42 U.S.C. § 300aa–12(e)(1), and "[u]pon the filing of a motion under paragraph (1) with respect to a petition, the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings," 42 U.S.C. § 300aa–12(e)(2). In respondent's view, these provisions, taken together, both authorize and confine this court's review authority with respect to proceedings before the special master to decisions either granting or denying compensation for a vaccine injury. According to respondent, then, no other determination of a special master is reviewable here.

We do not accept this argument. Although reading section 12 alone would suggest that this court's jurisdiction under the Vaccine Act arises only upon the filing of a motion for review of a special master's "decision," such an interpretation ignores the larger jurisdictional role that is assigned to this court under the Vaccine Act. Specifically,

under the Act, our jurisdiction is first engaged upon the filing of a petition ("[a] proceeding for compensation ... for a vaccine-related injury or death shall be initiated ... upon ... the filing of a petition ... with the United States Court of Federal Claims" (§ 300aa–11(a)(1)), and that jurisdiction remains in place until a judgment is entered ("[i]n the absence of a motion ... respecting a special master's decision ... the United States Court of Federal Claims shall immediately enter judgment") (§ 300aa–12(e)(3)). Further, the Act establishes the office of the special masters as an instrumentality of the court ("[t]here is established within the United States Court of Federal Claims an office of special masters") (§ 300aa–12(c)(1)); places the appointment power of the special masters in the hands of the court ("[t]he judges of the United States Court of Federal Claims shall appoint the special masters") (*id.*); and assigns to the court the responsibility for the promulgation of rules governing the conduct of vaccine proceedings ("the Court of Federal Claims shall promulgate rules ... for the resolution of petitions") (§ 300aa–12(d)(2)).

While the determination of the merits of a petition for compensation is a function that the Vaccine Act assigns to the office of the special masters (§§ 300aa–11(a)(1), –12(d)), and this court's role is limited to appellate review (§ 300aa–12(e)(2)), there is nothing in the language of the Act to suggest that this division of adjudicatory responsibility between court and special master was intended to suspend or displace the court's underlying jurisdiction under the Vaccine Act. More to the point, the Act contains no language that leaves the court without authority to examine issues addressed by the special master except when presented in the context of a "decision."

What petitioner seeks here is a review of the special master's interpretation of a rule of procedure, Vaccine Rule 21, that was promulgated by the court pursuant to its rule-making authority under the Vaccine Act (§ 300aa–12(d)(2)). To contend, as respon-

dent's brief does, that we lack jurisdiction to consider the special master's May 10, 2005, order, and hence, the correctness of the rule interpretation that it espouses, is to leave the court without authority to correct errors in the administration of the vaccine rules, except perhaps on a prospective basis. Such a scheme has little to recommend it; the authority to issue a rule must carry with it the authority to ensure its proper application.

■ Accordingly, we read section 12(e)'s reference to the court's jurisdiction to consider a motion for review of a special master's decision as an iteration of the court's existing jurisdiction under the Vaccine Act rather than as a proclamation of its only jurisdictional grant under the Act. And based on this reading, we construe petitioner's motion for review now before the court as a motion for relief from an order under Rule 60(b) of this court's own rules.[7] *See Patton v. Secretary of Dep't Health & Human Servs.,* 25 F.3d 1021, 1028–29 (Fed.Cir.1994) (recognizing the Court of Federal Claims' authority to grant relief under Rule 60(b) notwithstanding a petitioner's failure timely to file a motion for review of the special master's decision).

### C.

At the time petitioner filed his motion for voluntary dismissal pursuant to Vaccine Rule 21(a) (November 7, 2003), the court's practice was to issue a "judgment of dismissal" following a petitioner's voluntary dismissal of suit. The issuance of a judgment was seen as essential to preserving a petitioner's right under the Vaccine Act to pursue a subsequent civil action against a vaccine manufacturer or administrator for the alleged vaccine-caused injury.

The legitimacy of this practice was brought into question in *Hamilton v. Secretary of Dep't Health & Human Servs.,* No. 02–838V, 2003 WL 23218074 (Fed.Cl. Nov. 26, 2003). In that case, the respondent argued that the issuance of a judgment following a petitioner's voluntary dismissal subverted the

---

7. At oral argument, respondent appeared to agree with the court's conclusion that Rule 60 remains available to the court to address concerns of the sort that petitioner has raised, not-

withstanding the absence of a decision by the special master. Given this acknowledgment, it is not clear why this court's jurisdiction to hear this matter was ever challenged in the first instance.

scheme of the Vaccine Act because it facilitated a petitioner's later pursuit of a civil action without the need for any meaningful participation in the mandatory remedy for relief of vaccine-related injuries that Congress had prescribed in the Vaccine Act.[8] The respondent contended that the Act, correctly interpreted, permits entry of judgment only after the issuance of a decision by the special master. That argument prevailed. In a decision issued on November 26, 2003, the special master concluded that under the provisions of the Vaccine Act, "a 'judgment' properly follows only after a special master's 'decision' [which the statute specifies] is a document in which a special master addresses 'whether compensation is to be provided under the Program and the amount of such compensation.'" *Id.* at *4 (quoting 42 U.S.C. § 300aa–12(d)(3)(A)).

It is this ruling, which has since been adopted by the office of the special masters, that defines the current practice before this court.[9] It is this same ruling that prompted petitioner in this case to move for the withdrawal of his voluntary dismissal and to seek in its place a judgment on the record, i.e., a determination of the merits.

As noted above, the special master declined to grant petitioner relief on the ground that a voluntary dismissal of suit put the matter beyond the reach of any later correction. The special master concluded that the motion for voluntary dismissal was a self-executing document that required no action by the court and "automatically divested this Court of jurisdiction." *Bernhardt,* slip op. at 1 (order denying reconsideration).

█ Leaving aside the jurisdictional issue that remained unresolved in the special master's order, we would otherwise agree with the conclusion that a vaccine petition, once voluntarily dismissed, cannot be reinstated by the special master: neither the provisions of the Vaccine Act nor the rules of procedure that apply to vaccine injury cases (Appendix B of this court's rules) provide such authority. Such a result is to be distinguished, of course, from the court's own rules of procedure where relief of the sort petitioner is seeking potentially would be available through a motion filed pursuant to Rule 60(b). Rule 60(b) enumerates various criteria, identified more fully below, pursuant to which a court "upon such terms as are just . . . may relieve a party or a party's legal representative from a final judgment, order, or proceeding."

Although the Vaccine Rules do invest the special masters with some aspects of Rule 60 authority, that authority, set out in Vaccine Rule 36, is confined to motions seeking relief from a "judgment" and does not include, as the court's Rule 60 does, the possibility of

---

8. The Vaccine Act bars the filing of a suit in a state or federal court seeking damages in excess of $1000 against a vaccine manufacturer or administrator for a vaccine-related injury or death unless a petition first was filed under the Vaccine Program and "the United States Court of Federal Claims has issued a judgment under section 300aa–12 of this title." 42 U.S.C. § 300aa–11(a)(2)(A). The Act permits a petitioner to reject a judgment, through an election made in writing, in favor of pursuing a civil remedy. 42 U.S.C. §§ 300aa–21(a). Absent a judgment of the court, however, the Act permits a petitioner to pursue a civil remedy only where the special master has failed to enter a decision on the petition within 240 days after its filing or the court fails to enter a judgment within 420 days after its filing. 42 U.S.C. § 300aa–21(b).

9. The chief special master, for example, includes in his standard preliminary case management order issued at the outset of a vaccine proceeding the following warning about the jurisdictional implications of a voluntary dismissal:

**Finally,** the court wishes to issue a special warning concerning the consequences of filing a "voluntary dismissal." Once a Program petition is filed, a petitioner has two ways of leaving the Program while preserving the possibility of filing a civil action against a vaccine manufacturer or administrator on account of the same injury. *See* 42 U.S.C. § 300aa–11(a)(2)(A). First, a petitioner may choose to withdraw from the Program after notice that the statutory time for a decision has elapsed, pursuant to 42 U.S.C. § 300aa–21(b). Second, a petitioner may leave the Program following entry of "judgment" pursuant to a final "decision" by the special master, pursuant to 42 U.S.C. § 300aa–12(d)(3)(A). Another way of leaving the Program is when a petitioner voluntarily dismisses his own claim, either unilaterally or via stipulation with respondent. **However, utilizing voluntary dismissal to leave the Program will not result in a "judgment," and therefore it apparently will not preserve that petitioner's right to file a tort suit against a vaccine manufacturer or administrator.**

relief from what concerns us here: a final "order" or "proceeding." In the absence of such specific authority granted either by statute or rule, the special master would not have the authority to revisit either petitioner's voluntary dismissal or the order declaring its effect. *See Patton*, 25 F.3d at 1025–27. It falls then to this court to decide whether petitioner is entitled to relief.

Rule 60(b) provides as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under RCFC 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In examining the applicability of these criteria to the instant case, we note at the start that Rule 60(b) is essentially a rule of equity "intended to preserve 'the delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts.'" *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.1970)). Keeping this purpose in mind, we would characterize the case before us as a suit seeking relief from either a final order (the special master's order of May 10, 2005) or a final proceeding (petitioner's motion of November 7, 2003, for a voluntary dismissal). Under either heading, however, the harm petitioner is seeking to undo—a dismissal unaccompanied by a judgment preserving petitioner's right to commence a subsequent civil action—is not a harm of petitioner's own making. This harm is, instead, the result of a change in legal process, the occurrence of which petitioner could not reasonably have foreseen.

The facts show that petitioner filed the motion for voluntary dismissal with the expectation, as confirmed by then-existing practice and procedure, that the court would issue a judgment of dismissal. That expectation, however, was never realized. As the result of an interpretation of the Vaccine Act reached in an unrelated case, *Hamilton*, 2003 WL 23218074, shortly after petitioner filed his motion for voluntary dismissal, the procedure was changed to restrict the issuance of judgments only to those cases concluded by a "decision" of the special master. Thus, no judgment was entered in petitioner's case; the voluntary dismissal, however, was given effect.

Rules of procedure are intended to facilitate the disposition of lawsuits in a fair, just, and expeditious manner. To accomplish that purpose, however, the rules must be applied in a uniform and consistent manner. Unannounced departures in settled practice of the sort that occurred here have no place in an orderly system of justice. Therefore, petitioner is entitled to relief under Rule 60(b). Of the various grounds for relief there enumerated, the last—"any other reason justifying relief"—would appear to fit this case.

## CONCLUSION

For the reasons set forth above, the special master's May 10, 2005, order is hereby VACATED, and petitioner's motion to withdraw the voluntary dismissal is GRANTED. Correspondingly, petitioner's motion for judgment on the record is reinstated, and the petition shall be remanded to the special master for further consideration.