Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 15, 2010      Decided February 8, 2011

No. 10-7031

OSCAR SALAZAR, BY HIS PARENTS AND NEXT FRIENDS,
ADELA AND OSCAR SALAZAR, ET AL.,
APPELLEES

CLARENCE H. CARTER, IN HIS OFFICIAL CAPACITY AS
DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES,
APPELLANT

v.

DISTRICT OF COLUMBIA AND VINCENT C. GRAY,
IN HIS OFFICIAL CAPACITY AS
MAYOR OF THE DISTRICT OF COLUMBIA,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:93-cv-00452)

———

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the

cause for appellant. With him on the briefs were *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

*Kathleen L. Millian* argued the cause for appellees. With her on the brief were *Bruce J. Terris* and *Zenia Sanchez Fuentes*. *Lynn E. Cunningham* and *Martha J. Perkins* entered appearances.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The District of Columbia appeals the denial of a motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure to vacate an order on dental services under a settlement agreement regarding medical services for children eligible for Medicaid. The district court ruled that the motion was untimely and, alternatively, that the challenge to its authority to order relief exceeding the federal standards underlying the settlement agreement lacked merit in view of its authority to enforce the agreement. On appeal, the District government contends that the district court erred in dismissing the motion as untimely, and abused its discretion by imposing requirements that exceed the parties' settlement agreement.

The circumstances do not indicate that the motion to vacate was untimely. In the context of institutional reform litigation, which contemplates ongoing district court proceedings as occurred here, the parties continued to attempt to resolve their differences regarding compliance with the dental order, with the district court's encouragement. On January 27, 2006, the court-appointed monitor filed a report indicating that goals set by the dental order were unrealistic and a new evaluation was

warranted. The District government filed its motion to vacate four months later. Nonetheless, the district court could properly find that the District government failed to show the requisite extraordinary circumstances to warrant relief under Rule 60(b)(6). The legal argument that the district court exceeded its authority by requiring the District government to engage in activities to which the parties did not agree and that are not required by federal law could have been raised on appeal from the dental order; the District government noticed an appeal and then withdrew it. Accordingly, we affirm the denial of the Rule 60(b)(6) motion.

## I.

This appeal arises in the context of a complex remedial order concerning medical services and assistance provided by the District of Columbia government pursuant to the Medicaid provisions of the Social Security Act, 42 U.S.C. §§ 1396a, 1396d (Chapter 19). On January 22, 1999, the settlement agreement between the plaintiff class ("appellees") and the District government was approved and entered as an order by the district court. The Settlement Order provides in paragraph 36 that the District government "shall provide or arrange for the provision of early and periodic screening, diagnosis, and treatment (EPSDT) services when they are requested by or on behalf of children." As relevant, appellees filed two motions to enforce the provisions relating to dental care.

First, on July 3, 2002, appellees moved to enforce Paragraph 36 in part because in 2001 only 30.65% of eligible children received dental services and only 20.55% received preventive dental services. By order entered seven months later, the district court found that the District government was in violation because its own reports showed that "the vast majority of children within the class covered by this litigation who should

receive lead blood screening and dental services are not getting them." Mem. Op. (Feb. 28, 2003) at 1. The District government was ordered to: (1) notify, at least annually, dental care providers of the Medicaid requirements; (2) require each managed care organization to develop a corrective action plan; and (3) mail, by April 15, 2003, to all households in the District of Columbia with one or more Medicaid-eligible children a written notice describing the dental benefits. The district court also ordered the court-appointed monitor to prepare a report by May 15, 2003 evaluating the effectiveness of these efforts.

Second, after the monitor filed his report on June 17, 2003 recommending improved strategies for the broader provision of dental services, appellees again moved to enforce the Settlement Order on April 23, 2004. Six months later, in view of its conclusion the District government had violated Paragraph 36, the district court ordered various remedial measures to increase the rate at which children were receiving dental care. The District government was ordered to: (1) develop a dental periodicity schedule that complies with generally accepted dental standards; (2) develop a corrective action plan for ensuring that all Medicaid-eligible children receive dental services, including increased provider participation, provider training, and outreach; and (3) meet specific participation goals, ranging from 70% to 85%, depending on age, no later than September 30, 2007. Order of Oct. 18, 2004 ("the Dental Order").

The District government noted an appeal from the Dental Order on November 16, 2004. On January 27, 2005, however, it moved to hold the appeal in abeyance pending its filing a motion in the district court to "dissolve" the Dental Order. Then, on March 15, 2006, the District government moved to dismiss the appeal, which motion was granted, *see* Order, No. 04-7200 (D.C. Cir. Mar. 15, 2006). The monitor had filed a

report on January 27, 2006, pursuant to the district court's order of September 14, 2005, outlining strategies to enhance access to dental care for Medicaid-eligible children and suggesting that evidence from the several states and the standard of 57% set by the U.S. Department of Health and Human Services indicated that the Dental Order set unrealistic dental utilization rates and should be reevaluated.

Four months later, on May 26, 2006, the District government filed a motion to vacate the Dental Order on the ground that the district court had exceeded its authority. The District government argued: (1) the evidence did not support a finding it had violated the Settlement Order by failing to provide and arrange for appropriate dental services upon request; (2) the remedial relief was not tailored to cure a constitutional or federal law violation; (3) it was placed in the position of being an insurer of dental care under an inequitable strict liability standard; and (4) the relief "[v]astly [e]xceeds the [s]tandards set by the [f]ederal and [l]ocal [a]gencies [a]dministering" the Medicaid program for children's medical care. Memorandum of Points and Authorities in Support of Defendants' Motion to Vacate Order Granting Injunctive Relief Dated October 18, 2004 at 3–4, *Salazar v. District of Columbia*, No. 93-cv-452 (D.D.C. May 26, 2006), ECF No. 1153. The motion did not reference the monitor's January 27, 2006 report although it referred to a 2000 report by the General Accounting Office indicating the limited effect of payment increases on provider participation that was also cited in the monitor's report.

Additionally, in response to appellees' opposition, the District government argued that continued enforcement of the Dental Order was unjust and that it was entitled to relief because the Dental Order imposed obligations beyond those negotiated by the parties, and under Rule 60(b)(6) the district court has "a

large degree of discretion in granting relief."[1]   Defendants'
Reply to Plaintiff's Opposition to Defendants' Motion to Vacate
the Court's Injunction of October 18, 2004 at 5, *Salazar v.
District of Columbia*, No. 93-cv-452 (D.D.C. Sept. 12, 2006),
ECF No. 1219.  The reply argued that the monitor's January 27,
2006 report showed that the Dental Order's requirement of an
80% participation rate by 2007 is (in the District government's
words) "utterly unrealistic and may not be achievable at all." *Id.*
at 6.  It also noted "the lack of any direct evidence of any
member of the plaintiff class having been effectively denied
dental services to which they are entitled."  *Id.* at 7.  It
concluded:

> This is an extreme case, the Dental Order requires the
> District [government] achieve a result that the Court's
> Monitor [h]as opined to be unachievable with tools the
> Monitor has found unlikely to succeed.  Rule 60(b)(6)
> was designed for just such an occasion.

*Id.*

The district court denied the motion to vacate on February
18, 2010 (over 3 ½ years after it was filed).  It ruled that the
motion was untimely because it was filed nineteen months after
the Dental Order was entered, noting the District government's
"inexplicable delay." *Salazar v. District of Columbia*, 685 F.
Supp. 2d 72, 75 (D.D.C. 2010).  The district court concluded no
subsection of Rule 60(b) authorized the motion at this late date,
noting that Rule 60(b) required a motion to be filed within a
"reasonable time,"and that it is not a substitute for appeal.  The

---

[1] Although the District government's reply also argued that
it was entitled to relief under Rule 60(b)(5), it states on appeal that it
relied only on Rule 60(b)(6).  *See* Appellant's Br. 11; Appellee's Br.
21.

district court concluded relief under Rule 60(b)(6) was unwarranted because the District government had identified no "exceptional or extraordinary circumstances."[2] *Id*. at 12. The district court also rejected the challenge to its authority inasmuch as the Dental Order enforces "with great specificity" paragraphs 36, 49, 52, and 57 of the Settlement Order. *Id.* at 10–11. The district court observed that "[v]irtually all of the legal arguments have previously been examined and rejected," and that the new argument — that the Dental Order required relief in excess of federal standards — was not dispositive because the Settlement Order embodied and held the parties to their voluntary agreement, citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 439 (2004). On May 26, 2010, the district court denied the District government's motion for a stay.

The District government appeals, contending that the district court abused its discretion in denying the motion to vacate as untimely and exceeded its authority by imposing requirements in the Dental Order beyond the parties' settlement agreement.

## II.

Federal courts "long ago established" that they "would not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) (citing *Bronson v. Schulten*, 104 U.S. 410 (1881)), *overruled on other*

---

[2] The district court also addressed relief under other provisions of Rule 60(b) and Rules 52 and 59. *See Salazar*, 685 F. Supp. 2d at 75–76. The District government's states that none of these rules were invoked by it in the district court, Appellant's Br. 11; *accord* Appellees' Br. 13, and its brief on appeal does not address them.

*grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 & n.2 (1976). If the district court or court of appeals was in the same term in which the challenged judgment was entered "the judge 'had plenary power . . . to modify his judgment for error of fact or law or even revoke it altogether.'" *United States v. Beggerly*, 524 U.S. 38, 42–43 (1998) (quoting *Zimmern v. United States*, 298 U.S. 167, 169–70 (1936)). From the beginning, however, there also was "a rule of equity to the effect that under certain circumstances . . . relief will be granted against judgments regardless of the term of their entry." *Id.* But to obtain such relief, "resort had to be made to a handful of writs, the precise contours of which were 'shrouded in ancient lore and mystery.'" *Id.* at 43 (quoting FED. R. CIV. P. 60 advisory committee's note on 1946 amendment).

The Supreme Court, in fashioning Rule 60(b), "took notice of the fact that the terms of the district court may vary in length and that the expiration of the term might occur very soon, or quite a long time, after the entry of a judgment." *Hazel-Atlas Glass*, 322 U.S. at 255–56 (Roberts, J., dissenting). The Court did not, however, disturb the equitable principles that embodied prior practice. "Rule 60(b) does not provide a new remedy at all, but is simply the recitation of pre-existing judicial power." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 234–35 (1995).

In 1938 the Court promulgated a uniform rule permitting a motion to relieve a party from a judgment but requiring that the motion be made "within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding" and only where the order or proceeding was taken "through [the movant's] mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b) (1938), *reprinted in* James Wm. Moore & Elizabeth B.A. Rogers, *Federal Relief from Civil Judgments*, 55 YALE L.J. 623, 632 (1946). Nonetheless, the "salutary rule as to finality" was retained and, after six months

the judgment, order, or proceeding could not be challenged except by a proper collateral action. *Hazel-Atlas*, 322 U.S. at 256 (Roberts, J., dissenting).

In 1948, Rule 60(b) was amended to "grant[] courts a broader power to set aside judgments than did the old rule." *Klapprott v. United States*, 335 U.S. 601, 609 (1949). The amended rule established six grounds for relief, extended the time limitation from six months to one year for the first three grounds — excusable neglect, newly discovered evidence, and fraud — and provided that the latter three — a void judgment; a judgment that has been satisfied, relies upon a prior judgment that has been reversed, or would be inequitable to have prospective application; or for any other just reason — have no specific time limit and need only be brought within a "reasonable time." Rule 60(b) remains virtually unchanged since 1948.[3] It has three important limitations: First, Rule 60(b)

---

[3] Rule 60(b) was amended in 1987, but the advisory committee notes describe the amendment as "technical" and that "[n]o substantive change [was] intended." FED. R. CIV. P. 60 advisory committee's note on 1987 amdt. Similarly, Rule 60(b) was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes [were] intended to be stylistic only." FED. R. CIV. P. 60 advisory committee's note on 2007 amdt. The reference in the final sentence that relief is available by a motion or independent action was "deleted as unnecessary." *Id.* Rule 60(b)–(e), as presently constituted, reads:

(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence,

includes a "requirement that the motion 'be made within a reasonable time' and the more specific 1-year deadline for asserting three of the most open-ended grounds of relief (excusable neglect, newly discovered evidence, and fraud)." *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005) (quoting FED. R. CIV. P. 60(c)). Second, the Supreme Court cases have required a movant seeking relief under Rule 60(b)(6) to show "'extraordinary circumstances' justifying the reopening of a final judgment." *Id.* (quoting *Ackermann v. United States*, 340

---

could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) **Timing and Effect of the Motion**.

(1) *Timing*. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality*. The motion does not affect the judgment's finality or suspend its operation.

(d) **Other Powers to Grant Relief**. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

(e) **Bills and Writs Abolished**. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

U.S. 193, 199 (1950)).  Finally, "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Id.*

**A.**

"Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).  That is, its provisions are "mutually exclusive" to the extent that subsection (6) cannot be used to avoid the one-year limitation in subsections (1)–(5), such that "a party who failed to take timely action due to 'excusable neglect' [within one year] may not seek relief more than a year after the judgment by resorting to subsection (6)." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  *See also Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988).

Rule 60(b)'s concern with finality, embodied originally in the term rule, subsequently in the strict six-month rule, and now in the "reasonable time" requirement, does not carry the same significance in long-running equitable relief as it would in an action where the court's role had ended and the litigants relied on the repose inherent in the end of litigation.  As this court has emphasized, "[t]he power of a court of equity to modify a decree of injunctive relief . . . is long-established, broad, and flexible." *United States v. W. Elec. Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir.) (Friendly, J.), *cert. denied*, 464 U.S. 915 (1983)).  *See generally* CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2961 (2010).  Importantly, the Supreme Court observed:

> The upsurge in institutional reform litigation since *Brown v. Board of Education*, 347 U.S. 483[ ] (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for *extended periods of time*, the likelihood of significant changes occurring during the life of the decree is increased.

*Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 380 (1991) (emphasis added). The Court thus instructed that "a flexible approach is often essential to achieving the goals of reform litigation." *Id.* at 381. More recently the Court observed that "injunctions issued . . . often remain in force for many years, and the passage of time frequently brings about changed circumstances — changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights — that warrant reexamination of the original judgment." *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009). Although the motion in *Rufo* was not filed until ten years after the entry of the consent decree, the Court never questioned the timeliness of the Rule 60(b) motion.[4] The only

---

[4] The procedural setting in *Rufo* is instructive. It concerned a 1971 challenge to double bunking of pretrial detainees. An injunction was entered barring double bunking as unconstitutional, and no appeal was taken. 502 U.S. at 373. When months passed without action by the city, the district court ordered the commissioner to transfer the detainees to other institutions; the court of appeals affirmed. *Id.* at 373 n.2. When the problem remained unresolved as of 1977, the district court ordered the city to renovate another facility as a substitute; the court of appeals affirmed and ordered the jail closed on October 2, 1978, unless a plan was presented to create a constitutionally adequate facility. *Id.* at 374. On remand, a consent decree was entered based on construction of a new jail with only single occupancy cells. *Id.* at 375–76. One week after the district

question was "whether a 'significant change either in factual conditions or in law' rendered continued enforcement of the judgment 'detrimental to the public interest.'" *Horne*, 129 S. Ct. at 2596–97 (quoting *Rufo*, 502 U.S. at 384).

Concluding that a motion to vacate the settlement order or subsequent implementation orders, such as the Dental Order, are subject to a strict time limit would run counter to the policies underlying *Rufo* and its progeny. *Rufo* and *Horne* rejected a "hardening" of the "traditional flexible standard" for modification of injunctions and consent decrees. 502 U.S. at 379 (citing *Carey*, 706 F.2d at 968); 129 S. Ct. at 2594–95 (citing *Rufo*)). The circuits have likewise rejected "an unduly strict" interpretation of the "reasonable time" requirement. *See, e.g.*, *Associated Builders & Contractors v. Mich. Dep't of Labor and Economic Growth*, 543 F.3d 275, 279 (6th Cir. 2008). Prejudice to the opposing party, among others, is a relevant

---

court approved the consent decree, *id.* at 376, the Supreme Court decided *Bell v. Wolfish*, 441 U.S. 520, 541 (1979), rejecting a constitutional due process challenge to double-bunking for pretrial detainees. Multiple delays attended the construction of the new facility, which was still ongoing ten years later in 1989 when the Sheriff moved to amend the consent decree to allow double bunking based on changed circumstances: the intervening decision in *Bell v. Wolfish* and the greater-than-anticipated increase in the size of the pretrial detainee population. *Id.* at 376. The motion was denied and affirmed on appeal. The Supreme Court reversed, holding the lower courts had not applied the correct standard: "The experience of the [] Courts of Appeals in implementing and modifying such [consent] decrees has demonstrated that a flexible approach is often essential to achieving the goals of reform litigation." *Id.* at 381 (citing *Carey*, 706 F.2d at 967, 969).

14

factor.[5]     Moreover,   the   Seventh   Circuit   noted   in

    [5] *See, e.g.*, *Lemoge v. United States*, 587 F.3d 1188, 1196–97 (9th Cir. 2009) ("What constitutes 'reasonable time' [to bring a Rule 60(b)(1) motion] depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties.") (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)); *Thompson v. Bell*, 580 F.3d 423, 443 (6th Cir. 2009) ("Whether the timing of the motion [pursuant to Rule 60(b)(6)] is reasonable 'ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.'") (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)); *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 66 (1st Cir. 2003) ("The circumstances to be considered [in assessing the timeliness of a Rule 60(b)(4) motion] include the length of the delay, the justification for it, and the prejudice (if any) associated with the granting of relief."); *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410, 1412 (5th Cir. 1994) (holding that reasonable time determination in the context of a Rule 60(b)(6) motion "depends upon the particular facts and circumstances of the case" and citing *Ashford*, 657 F.2d at 1055, for the proposition that prejudice of other parties must be considered); *Schultz v. Commerce First Fin.*, 24 F.3d 1023, 1025 (8th Cir. 1994) ("We consider the movant's reason for delay [in bringing motion filed under both Rule 60(b)(5) and Rule 60(b)(6)] and the existence of any prejudice to the opposing party when determining a 'reasonable time.'"); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) (describing timeliness for motion brought pursuant to Rule 60(b)(1) and 60(b)(6)) (quoting *Ashford*, 657 F.2d at 1055); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir. 1981) ("What qualifies as a reasonable time [for bringing a Rule 60(b)(6) motion], however, will ordinarily depend largely on the facts of a given case, including the length and circumstances of the delay and the possibility of prejudice to the opposing party."); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067 (10th Cir. 1980) (noting that lack of prejudice to non-moving party due to delay in bringing Rule 60(b)(1)

*Shakman v. City of Chicago* 426 F.3d 925, 934 (7th Cir. 2005), that a district court deciding whether to modify or vacate "[a] Consent Decree must take into account the nature of that litigation as well as the resulting prejudice, if any, to the present elected officials and the public they represent."

Notably, this court has not identified a standard for assessing "reasonable time" under Rule 60(b). It has, however, considered prejudice to the non-moving party. In *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 500 F.2d 808, 810 (D.C. Cir. 1974), for instance, the court stated that a district court may vacate and reenter a judgment under Rule 60(b)(6) to allow a timely appeal "when neither party had actual notice of the entry of judgment, when the winning party is not prejudiced by the appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry. This holding was reaffirmed in *In re Sealed Case (Bowles)*, 624 F.3d 482, 487–88 (D.C. Cir. 2010). Likewise, in *Jackson v. Jackson*, 276 F.2d 501, 504 (D.C. Cir. 1960) [Rule 60(b)(5)] the court concluded that where "[n]o intervening rights of [the non-moving party] appear to have been prejudiced . . . [t]he time accordingly was reasonable." *Accord Erick Rios Bridoux v. E. Air Lines, Inc.*, 214 F.2d 207, 209 & n.3 (D.C. Cir. 1954).

A litigant's diligence in pursuing review of a decision, either through appeal or through Rule 60(b)(6) relief, is relevant in assessing whether extraordinary circumstances are present. *See Gonzalez*, 545 U.S. at 537. In a complex and long-running institutional reform case such as this, however, it would be an abuse of discretion to rule that a Rule 60(b)(6) motion is not filed within a reasonable time without finding that the movant's

and 60(b)(6) motion constituted a factor in favor of finding that motion was brought within a reasonable time).

delay has prejudiced the non-moving party. In the instant case, there is not only no finding of prejudice, there has been no allegation of prejudice by appellees either before this court or the district court. Appellees' argument in the district court was limited to stating that the District government had "submitted no reasons for the delay in bringing th[e] motion" and that a "motion brought over 20 months after entry of the Dental Order is clearly untimely." Plaintiffs' Opposition to Defendants' Motion to Vacate the Court's Order Granting Injunctive Relief Dated October 18, 2004 at 14, *Salazar v. District of Columbia*, No. 93-cv-452 (D.D.C. July 7, 2006), ECF No. 1171. Indeed, it appears from a lengthy notation in the district court's memorandum opinion explaining its delay in ruling on the motion to vacate that the delay was caused in considerable part by cooperative efforts among the parties and the monitor to resolve the difference between appellees and the District government, with the strong encouragement of the court, *Salazar*, 685 F. Supp. 2d at 74 n.2, without the necessity of a motion to vacate or a court order. In the period between entry of the Dental Order and the filing of the motion to vacate, the district court held nine status conferences with all of the parties. Also of note, and belying any notion that the parties had reached a period of repose, during the same period appellees filed nine and the District government filed two opposed motions. Moreover, in ruling that the District government's motion was untimely, the district court made no mention of the monitor's recent filing of a report on January 27, 2006, four months prior to the District government's filing the motion to vacate, despite the fact that the report offered "new policy insights," *Horne*, 129 S. Ct. at 2593, from a third party regarding the achievability of the dental utilization rates mandated by the Dental Order. Under the circumstances, appellees cannot have relied to their detriment on the repose afforded by the Dental Order, and an apparent decision by the District government to allow that order to stand. Because there is no argument of prejudice caused by

the timing of the District government's moving to vacate the Dental Order, the district court abused its discretion in ruling that the motion was not brought within a reasonable time.

**B.**

The phrase "extraordinary circumstances" does not appear in the text of Rule 60(b)(6), but the Supreme Court has added this gloss to the rule. The Supreme Court's earliest interpretations of the 1948 amendment that created Rule 60(b)(6) came in a pair of cases: *Klapprott v. United States*, 335 U.S. 601 (1949), and *Ackermann v. United States*, 340 U.S. 193 (1950). Both concerned naturalized German immigrants whose United States citizenship was withdrawn due to conduct preceding or during World War II. In *Klapprott*, the petitioner was served with a complaint for denaturalization and notice to respond within sixty days, but was arrested on criminal charges ten days later and a judgment by default was entered in the denaturalization action. 335 U.S. at 602–03. In *Ackermann*, three German immigrants represented by counsel answered a complaint for denaturalization and one appealed the district court judgment against all three and gained a reversal. 340 U.S. at 195–96. Ackermann and his wife did not appeal, purportedly on the ground that they lacked funds to appeal and on the advice of an assistant commissioner at the Immigration and Naturalization Department that because they were "stateless" they would be released into the United States after the war. *Id.* at 196.

In *Klapprott*, the Court noted that because the Rule 60(b) motion was brought more than one year after the denaturalization judgment, the petitioner needed to allege more than mere "excusable neglect." 335 U.S. at 613. The Court held Rule 60(b)(6) to be applicable because the petitioner, at the time of his denaturalization hearing, was being held in jail by the

United States, "his adversary in the denaturalization proceedings." *Id.*

> The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to defend himself in the [denaturalization proceedings] than he would have been had he never received notice of the charges.

*Id.* at 614.

By contrast, in *Ackermann* the Court found unavailing the petitioner's argument that the denaturalization judgment was erroneous, that the petitioner was without any funds and under threat of losing his home, and that a government officer had apparently misled him. The focus of the Court in *Ackermann* was the fact that petitioner had a "duty to take legal steps to protect his interest in litigation" by appealing. 340 U.S. at 197. The Court deemed the petitioner to have "made a considered choice not to appeal" and he could not "be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong." *Id.* at 198. The Court distinguished *Klapprott* as being a case of "extraordinary circumstances," i.e., a case in which the petitioner "was deprived of any reasonable opportunity to make a defense . . . by officers of the very United States agency" that brought the denaturalization proceeding. *Id.* at 199–200. The difference between Klapprott and Ackermann, the Court concluded, was "between no choice and choice" and "no chance for negligence and inexcusable neglect." *Id.* at 202. Thus, if the movant had

an opportunity for appeal and forwent that appeal, "[s]ubsection (6) of Rule 60(b) has no application." *Id.*

The Supreme Court has not retreated from this restrictive understanding of Rule 60(b)(6). In *Liljeberg*, the Court treated the phrase "extraordinary circumstances" as a requirement for relief under Rule 60(b)(6), 486 U.S. at 863–64 & n.11, and its requirements continue as part of *Ackermann*'s progeny. *See, e.g.*, *Gonzalez*, 545 U.S. at 537; *cf. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) .

This court, in turn, has emphasized that Rule 60(b)(6) "'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). Interpreting the line of cases beginning with *Klapprott* and *Ackermann*, the court explained that "a more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5); otherwise, the ready availability of subsection (6) would make meaningless the limitation of subsection (5) to judgments with prospective application." *Twelve John Does*, 841 F.2d at 1140. Further, "a party who has not pursued an appeal may obtain relief under Rule 60(b)(6) only if there are . . . 'circumstances . . . so extraordinary as to bring [the movant] within *Klapprott* or Rule 60(b)(6),' i.e., circumstances that essentially made the decision not to appeal an involuntary one." *Id.* at 1141 (quoting *Ackermann*, 340 U.S. at 202) (internal citation omitted)). The court has understood "*Ackermann* [to] prohibit[] a court from utilizing Rule 60(b)(6) to relieve a party from a voluntary dismissal based only on financial hardship," *Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987), although the court has allowed relief when a litigant suffered from a disabling illness, where participation in litigation would cause greater

disability, and where the illness had depleted the litigant's financial resources, because "this combination of health *and* financial considerations was sufficient to permit relief under Rule 60(b)(6)," *id.* (emphasis in original). It has also held that there were "extraordinary circumstances" warranting Rule 60(b)(6) relief where an attorney was "grossly negligent," a circumstance not at issue here. *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235–36 (D.C. Cir. 1964). *Accord Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168–69 (9th Cir. 2002); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 195 (6th Cir. 1986); *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978).

The District government relies on *Good Luck Nursing Home*, 636 F.2d at 574. In that case, a nursing home sought reimbursement from the U.S. Department of Health, Education, and Welfare for legal and account expenses in connection with its administration of the Medicare program. The district court granted summary judgment to the nursing home but reconsidered three months later when the government revealed, by motion filed pursuant to Rule 60(b)(6), that the expenses in question were incurred in defending a civil action against the nursing home in which Medicare fraud and overpayment had been alleged. *Id.* This court affirmed:

> When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under [R]ule 60(b)(6) is proper even though the original failure to present that information was inexcusable.

*Id.* (internal citations omitted). Applying this rule in *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897 (D.C. Cir. 1996), the court held that Rule 60(b)(6) relief

was warranted where the government presented new information on the confidentiality of documents that the district court had originally ordered released by the Secret Service under the Freedom of Information Act.  The government provided this information within eighteen days of the order granting access to requested documents.  Relief was warranted in view of the interests of the Secret Service and the protected interest in confidentiality that belonged to a third party source and was "central to the litigation."  *Id.* at 903.

It is unnecessary to decide whether the rule of *Good Luck Nursing Home* and *Computer Professionals* survives the Supreme Court's decision in *Gonzalez* emphasizing that a "lack of diligence" effectively precludes a finding of "extraordinary circumstance."  545 U.S. at 537.  Regardless of the court's holdings in *Good Luck Nursing Home* and *Computer Professionals*, the Supreme Court's holdings in *Ackermann* and *Gonzalez* that a lack of diligence will preclude a finding of extraordinary circumstances control the outcome of this appeal.  Rule 60(b)(6) relief is not a "substitute for appeal," *Polites v. United States*, 364 U.S. 426, 432 (1960); *Twelve John Does*, 841 F.2d at 1141; *Gilmore v. Hinman*, 191 F.2d 652, 653 (D.C. Cir. 1951).  The District government made a "considered choice," *Ackermann*, 340 U.S. at 198, by noting an appeal and then moving to dismiss its appeal.

Furthermore, neither *Good Luck Nursing Home* nor *Computer Professionals* involved judgments providing for prospective relief.  One sought money for services rendered; the other sought the release of documents.  By contrast, the District government sought vacatur of the Dental Order arising under a Settlement Order having prospective application.  Where the claim is that the application of an order is prospectively inequitable, Rule 60(b)(5) is available.  *See Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Hall v. CIA*, 437 F.3d 94, 101 (D.C.

Cir. 2006); *Twelve John Does*, 841 F.2d at 1138–40; *see also Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421 (1856).[6] It is where a judgment has no prospective application and the neglect is inexcusable that Rule 60(b)(6) provides the only avenue for relief. *Agostini*, 521 U.S. at 239.

Accordingly, we affirm the order denying the District government's motion to vacate the Dental Order pursuant to Rule 60(b)(6) in the absence of the requisite extraordinary circumstances. The District government is not without remedies, however. Paragraph 71 of the Settlement Order provides for modification "at any time for any reason." The District government's legal argument may present a jurisdictional argument cognizable under Rule 60(b)(4), while its impossibility argument may be raised under Rule 60(b)(5).

---

[6] To the extent the District government contends that certain aspects of the Dental Order are impossible or impractical to achieve and it is inequitable for the Dental Order to have any prospective application, then its motion may be brought under Rule 60(b)(5), which "permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne*, 129 S. Ct. at 2593.